## McKay v. Grundy.

(Decided October 3, 1913).

## Appeal from Nelson Circuit Court.

1. Elections—Contest—Defendant Obstructing Service of Notice.— Where the defendant in an election contest conceals or absents himself, or in any other way obstructs the service of the notice of the contest, he will not be allowed to profit by his own wrong, or be heard to object that the process was not served sooner.

2. Elections—Contest—Notice of—Section 28 of Primary Act of 1912. —Under Section 28 of the Primary Election Law of 1912, which in one clause requires the contestant of an election to give written notice to the contestee within five days, and in a subsequent clause directs that the notice shall be served in the same manner as a summons from the circuit court, the notice may be said to possess the characteristics of both a notice and a summons; and may be served as a summons is served, or if that cannot be done within the five days by reason of the contestee concealing himself, or absenting himself, or by obstructing the service in any other way, it may be served at any time within five days, as a notice is served.

3. Statutes—Construction of.—A statute of doubtful meaning in a minor respect should be so construed as to carry out the otherwise clearly expressed intention of the Legislature.

JOHN S. KELLY and J. SMITH BARLOW for appellant.

W. H. FULTON and G. S. & J. A. FULTON for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

At the primary election of August 2, 1913, the appellant, Lud McKay, and the appellee, John B. Grundy, were the contending candidates for the Democratic nomination for the office of jailer of Nelson County. There were three other candidates for this nomination; but as each of them received fewer votes than McKay and Grundy received, and neither of them is making any claim to the nomination, it is not necessary to further mention them.

The county board of election commissioners canvassed the returns on August 5th, as required by law; and having ascertained and announced that McKay and Grundy had each received 639 votes, the board thereupon proceeded, as is required by sub-section 11 of section 1596a of the Kentucky Statutes, to determine, by lot, which of said candidates was entitled to the certificate of nomination. Grundy won, but after the board had declared the result, and before it had issued to Grundy a certificate of nomination, McKay's attorney called the board's attention to the fact that the certificate in the back of the poll book for New Hope precinct, which the election officers are required to sign, showing the number of votes cast and counted for each candidate in that precinct, although duly made out and correctly stating the number of votes so received by Grundy and by McKay respectively, in that precinct, had not been signed by the election officers. McKay's attorney thereupon argued to the board that the failure of the election officers to sign the certificate attached to the poll book invalidated the election as to that precinct, and required the board to disregard it in making a canvass of the election returns. This view of the law of the case was adopted by the board of election commissioners; and as Grundy had received 38 votes in that precinct as against 24 votes for McKay, the exclusion of that precinct reduced Grundy's total vote from 629 to 591, and McKay's from 629 to 605, thereby giving McKay, on the whole count, a majority of 14 votes.

Acting upon this conclusion the election commissioners, over Grundy's protest, withdrew their first decision awarding the nomination to Grundy by lot, and in lieu thereof declared McKay the nominee, and gave him a certificate to that effect.

In Excluding the New Hope precinct the election commissioners were clearly mistaken as to their duty, since they should have permitted the election officers of that precinct to meet and sign their certificate. On the day following the delivery of the certificate to McKay, the election officers of the New Hope precinct, who had in the meantime been advised of their oversight in failing to sign the certificate, met in the office of the county clerk and duly signed their names to the certificate, in the presence of the clerk. Grundy immediately prepared his notice of contest and placed it in the hands of the sheriff early in the morning of August 8th. Upon a trial

of the contest, McKay lost two votes in the recount of the ballots in the Balltown precinct, while Grundy lost one vote in that precinct; and proof having been made of the truth and regularity of the certificate of the New Hope precinct and its subsequent signing by the precinct election officers, the court restored it to its integrity as one of the returns as originally counted by the county board. By including the return from the New Hope precinct, and by deducting the respective losses in the Balltown precinct, the chancellor found that McKay had received 627 votes and Grundy 628 votes, and having entered a judgment declaring Grundy the nominee in accordance with the finding, McKay prosecutes this appeal.

In the trial below and here, McKay insisted and still insists, that the sole question before the court is one of jurisdiction. In the circuit court he raised the question of jurisdiction by motions to quash the several returns made by the sheriff; by motions to quash the notice which had been served upon him; and by a demurrer to the jurisdiction of the court; and, these motions and demurrers having been overruled, McKay refused to file any plea further than to the jurisdiction, or to further participate in the hearing of the contest. The court, however, proceeded with the trial; examined the ballot box of the Balltown precinct; heard evidence, and decided the case as above indicated.

The decision depends upon the effect to be given the notice of contest which was served upon McKay.

Section 28 of the Primary Election Law of 1912, relating to contests under said law, reads, in part, as follows:

"Any candidate wishing to contest the nomination of any other candidate who was voted for at any primary election held under this act shall give notice in writing to the person whose nomination he intends to contest, stating the grounds of such contest, within five days from the time the election commissioners shall have awarded the certificate of nomination to such candidate whose nomination is contested. Said notice shall be served in the same manner as a summons from the circuit court, and shall warn the contestee of the time and place, when and where the contestee shall be required to answer and defend such contest, which shall not be less than three, nor more than ten days after the service thereof. Such contest shall be tried by the judge of the circuit court of the county in which the contestee resides or is served.

Upon return of said notice properly executed as herein provided, to the office of the circuit clerk of the county in which said contestee resides or is served with such notice of contest, it shall be the duty of the clerk of the circuit court to immediately docket said cause and to immediately notify the presiding judge of the circuit court of said county that such contest has been instituted.''

It will be observed that the statute quoted requires that the notice shall be served within five days, and in the same manner as a summons from the circuit court.

Section 48 of the Civil Code of Practice provides that a summons shall be served by delivering, or if acceptance be refused, by offering to deliver a copy of it to the person to be summoned, thus requiring a personal service.

Section 625, however, relating to the service of a notice, reads as follows:

"A notice may be served by delivering a copy of it to the person to whom it is directed, or by offering to deliver it to him; or if he cannot be found at his usual place of abode, by leaving a copy there with a person over the age of sixteen years, residing in the same family with him; or, if no such person be there, by affixing such copy to the front door of such place of abode; or, if the person to whom the notice is directed cannot be found and has no known place of abode in this State, the notice may be served by delivering a copy to his agent or attorney.''

In the case at bar the election commissioners certified the nomination to McKay on August 5th, and the notice was placed in the hands of the sheriff, for service, on August 8th, which was within the five days provided by the statute, although the notice was not delivered to appellant until August 30th. Appellant insists that the service of the notice within the five days is jurisdictional, and that since it was not so served in this case, the circuit court was without jurisdiction to try the contest. On the other hand, appellee contends that the actual service of the notice is not jurisdictional, but that where the notice is placed in the hands of the sheriff within the five days, and the service thereof has been defeated by the defendant so concealing himself that he cannot be found, as was done in this case, the notice may be served as provided by section 625, or personally at the earliest opportunity after the expiration of the five days. There can be no doubt that McKay did so conceal himself that

he could not be found after a most diligent search by the sheriff and his deputy. The efforts upon the part of the sheriff to serve the notice are shown by his return upon the notice, which reads as follows:

"I, R. L. Hagan, Sheriff of Nelson Co., do hereby certify that the within notice came to my hands Friday, Aug. 8, 1913, about 8:30 a. m., and I immediately proceeded to the residence of the within named Lud McKay near Samuels Depot, Nelson Co., Ky., but did not find him nor any of his family at said residence; but after making diligent inquiry in the enighborhood I was unable to find him or his whereabouts, while this place was his residence, I learned that he and his family had been staying for some six weeks at his mother's (Mrs. Myra McKay) at Cox's Creek, near the Cross Roads, about four miles distant. I went there about 12 o'clock m. and learned from his mother that neither he nor his family were there, but he had left that morning, but she didn't know where he was.

"I returned to his mother's residence between 8 and 9 o'clock, p. m., Aug. 8, 1913, and found said McKay still absent and his whereabouts unknown.

"I thereupon delivered a copy of this notice to Dr. C. H. Cox, a white person over 16 years of age, living at said place, though myself and deputies made diligent inquiry but failed to find said McKay; and on Sunday morning, Aug. 10, the contestant, John B. Grundy, placed in my hands an affidavit which is hereby returned as part hereof, stating in substance that the said McKay was evading service of said notice and that Sunday, Aug. 10, 1913, was the last day for service thereof; and unless served that day it could not be served at all; and I thereupon proceeded Sunday afternoon to go to the residence of his said mother where he had been staying and found he had not returned and no one could give me any information of his whereabouts, and I thereupon left a copy of this notice with his mother, Mrs. Myra McKay, at her residence, she being a white person over 16 years of age.

"R. L. HAGAN, S. N. C."

It further appears that a copy of the notice was placed in the hands of deputy sheriff B. F. Irvine, who also made similar strenuous efforts to serve the notice upon McKay, as is shown by his return endorsed upon the notice.

McKay offered no evidence upon the trial, but has, in this court, tendered and offered to file, over appellee's objection, his affidavit giving a detailed account of his whereabouts during the time the sheriff and his deputy were busily but vainly searching for him, and showing that he could easily have been found at any time. The objection to the filing of this affidavit will have to be sustained, since the province of this court is to review the acts of the circuit judge, and not to try the case upon evidence which was not offered or heard in the circuit court. The issue presented by the affidavit was raised and tried in the circuit court; and if appellant had desired to contest that issue he should have done so there. The anomolous practice of seeking to supplement the record on appeal by offering evidence in this court which was not offered in the trial court, is not to be tolerated. The motion to file the affidavit is overruled.

Upon the issue of fact as to whether appellant did conceal himself so that he could not be found, the evidence clearly sustains the affirmative finding of fact by the circuit judge, which reads as follows:

"From the sheriff's return on said notices and the affidavit of contestant, it is clear that contestee, Lud McKay, who is alleged in the notice and affidavit to have had knowledge that the contest would be instituted from the time the certificate was awarded to him, secreted himself so that the officers could not locate or serve him by delivering to him a copy of the notice in person within five days."

The fact having been established that appellant did so secrete himself that the sheriff could not find him within the statutory period for serving the notice, will he be allowed to defeat a trial of his adversary's action by thus relying upon his own wrong? We cannot believe that the Legislature ever intended that such a result could possibly be brought about. On the contrary, when the primary law, above quoted, requires the contest to begin by a notice served upon the contestee, it certainly did not contemplate an impossible act upon the part of the contestant, especially where the impossibility was the result of the fraudulent act of the contestee in hiding himself beyond discovery. We have frequently said that in the absence of fraud or concealment upon the part of the contestee, the notice of a contested election must be given within the time prescribed by the statute; but, in those cases, and particularly in Broaddus v. Mason, 95

Ky., 421, and in the late case of Price v. Russell, 154 Ky., 824, where we held the notice was insufficient because it had not been served within the statutory period, we were careful to say that there was no charge of fraud or concealment against the contestee.

In Price v. Russell, *supra*, we used this language:

"There is no contention that the defendant absented himself, or in any way obstructed the service of the notice. The single question to be determined is, was the notice in time?

"If the contestee should conceal or absent himself, or in any other way obstruct the service of the notice, a different question would be presented; for a man is never allowed to profit by his own wrong, and he who prevents the exectuion of a process in time will not be heard to object that the process was not served sooner."

It is an old and blessed maxim of the law that no litigant shall ever be permitted to take advantage of his own wrong. It requires but a slight consideration of the question to see what would be the almost universal result if a contestee were permitted to defeat his adversary's contest by so hiding himself, for a few days, as to prevent the sheriff finding him. It would be an easy matter for the contestee either to hide himself, or even leave the State, for a week, where he would certainly be beyond the process of the court; nevertheless, if the actual service of the notice after the manner of a summons is jurisdictional, the statute may be completely nullified by the fraud of the contestee, and the contestant is wholly without a remedy, although he has an undoubted right. A mere statement of the proposition carries its own condemnation.

It is true the statute requires a notice of the contest to be given to the contestee, and further provides that the notice shall be served in the same manner as a summons from the circuit court; but the process-paper is still a notice with nothing but the characteristics of a notice. Like all notices, it is signed by the person giving the notice; a summons is signed by the clerk of the court, and is the official command of the court to answer a petition theretofore filed. So, when the statute, in one clause, requires the contestant to give notice of his contest within a specified time, and in a subsequent clause directs that the notice shall be served as a summons, the notice may be said to possess the characteristics of both a notice and a summons, and may be served as a sum-

mons is served; or, if that cannot be done within the five days by reason of the contestee concealing himself, or absenting himself, or by obstructing the service in any other way, it may then be served at any time within the five days, as a notice is served. The statute being of doubtful meaning in this respect, it should be so construed as to carry out the otherwise clearly expressed intention of the Legislature, which, in this instance, was to provide an effective, simple and speedy procedure for the trial of election contests.

It appearing in the case at bar that every reasonable effort was made to serve appellant with the notice by delivering it to him personally as a summons, but without success, and that it was properly served as a notice as is required to be served under section 625 of the Civil Code, within the five days fixed by the statute, we are of opinion the requirements of the statute as to notice, were satisfied. The facts of this case, as to the service of the notice, bring it within the rule announced; and, it appearing that the finding of the circuit judge declaring Grundy the nominee of his party is fully sustained by the evidence, the judgment is affirmed.