## M. G. Ward v. Howard.

### Hensley v. Harbin.

### John A. Ward v. Brock.

### Rice v. G. W. Howard.

### Creech v. Jones.

### Pope v. Forester.

(Decided October 9, 1917.)

### Appeals from Harlan Circuit Court.

1. Elections—Contested Elections—Notice of Contest—When Must be Given.—Notice of contest must be given within five days from

the time the votes are canvassed and tabulated by the election commissioners, and it has been thus determined who received a majority of the votes, although no certificate of nomination has been issued by the election commissioners.

2. Elections—Contested Elections—Time When Notice Must be Given.—Where the certificate of nomination was not issued by the election commissioners until thirty days after the vote had been canvassed and tabulated and the result ascertained, it was too late to give notice of contest within five days after the certificate was issued.

3. Elections—Contested Elections—Notice of Contest Necessary to Give Jurisdiction.—The giving of the notice of contest within the time prescribed by statute is a jurisdictional prerequisite, and if the notice is not given within this time, the circuit court has no jurisdiction to hear or determine the case.

4. Elections—Contested Elections—Notice of Contest.—The provisions of the corrupt practice act, that a certificate of nomination shall not be issued until the expense statement is filed, do not modify or amend the provisions of the primary election law concerning the time when notice of contest must be given.

5. Elections—Contested Elections—Supersedeas Bond Must be Executed—Jurisdiction.—Subsection 28 of section 1550 of the Kentucky Statutes provides that the party desiring to appeal from a judgment of the circuit court shall execute a supersedeas bond on the day the judgment is rendered, and the execution of a bond on this day is indispensable to give this court jurisdiction, unless the failure to execute it is excused by good reasons.

6. Elections—Contested Elections—Supersedeas Bond Must be Executed—What Will Excuse Delay.—When it is made to satisfactorily appear that the contestant was prevented from executing the bond on the day the judgment was rendered by unavoidable casualty or misfortune or accident or surprise which ordinary prudence could not have guarded against, or to circumstances beyond his control, he may execute the bond on the day following, and it will have the same effect as if executed on the day the judgment was rendered.

D. C. JONES, ACREE & POPE and W. F. HALL for appellants.

CLAY & CARTER, W. A. BROCK and N. R. PATTERSON for appellees.

OPINON OF THE COURT BY JUDGE CARROLL—Dismissing appeal in each case.

These are six contested election cases from Harlan county involving the offices of county judge, sheriff, county attorney, county superintendent of schools, county clerk, and jailer, the appellants here being the contestants and the appellees here being the contestees below. In each of the cases the same determinative

questions of law are presented, and so they will be disposed of in one opinion, it not being necessary to consider at all the sufficiency of the grounds of contest, which it may be observed were based on alleged violations of the corrupt practice act.

Special demurrers drawing in question the jurisdiction of the court, as well as general demurrers drawing in question the sufficiency of the notices, and also responses setting up grounds of counter-contest, were filed by all of the contestees, and these responses they had the right to file without waiving their objections simultaneously made by appropriate demurrers to the jurisdiction of the court and the sufficiency of the notices.

The trial court, adjudging that the demurrers to the jurisdiction of the court were well taken, and without considering any other question, dismissed the suits, and the contestants have each prosecuted an appeal to this court. In this court the appellees, contestees below, have entered motions to dismiss the several appeals upon the ground that the supersedeas bonds required by the statute were not executed, and if these motions should be overruled, then they ask an affirmance of the judgments.

Although only matters of law are involved in both of the questions submitted, we would in ordinary cases first dispose of the motion to dismiss the cases, because if the appeals are to be dismissed for want of jurisdiction in this court to hear and determine the cases, it would be entirely unnecessary to pass on the correctness of the ruling of the lower court in dismissing the suits; but in view of the fact that both of these questions are pressed on our attention by counsel for contestants and contestees, and it is of public interest that each of them should be adjudicated so that the proper procedure concerning the points involved may be settled, we have decided to depart from the usual practice and determine the correctness of the ruling of the trial court in dismissing the contest suits, although for reasons that will be hereafter stated the appeals must be dismissed.

The primary election was held on August 4, 1917, and it is conceded by the contestants that on the face of the returns made by the election officers each of the contentees received a substantial majority of the votes cast at the election. It is provided in subsection 26 of section 1550 of the Kentucky Statutes, treating of primary elections, that "On the third day after the close of any primary nominating election the County Election Com-

missioners of each county shall proceed to canvass the returns of said primary election and tabulate the same. The tabulation of votes for all offices for which the nomination papers are required to be filed in the county court clerk's office shall be on another separate sheet of paper for each political party and shall be filed in the county court clerk's office immediately after the canvass of the returns and tabulation of the votes by said election commissioners; and certificates of nomination shall immediately issue to the persons receiving the greatest number of votes for the offices for which they were candidates.''

Under the provisions of this statute and repeated decisions of this court, the duties of the county election commissioners are confined to a mere counting or tabulation of the votes received by each candidate as shown by the returns of the election officers, and if this statute had been followed by the election commissioners certificates of nomination would have immediately issued to the contestees, who, as said, received, according to the returns of the election officers, substantial majorities over the contestants. Therefore the certificates of nomination would in the ordinary course of procedure under the statute have been issued by the election commissioners to the contestees on August 7, 1917.

It is further provided in subsection 28 of section 1550 of the statutes that "Any candidate wishing to contest the nomination of any other candidate who was voted for at any primary election held under this act shall give notice in writing to the person whose nomination he intends to contest, stating the grounds of such contest, within five days from the time the election commissioners shall have awarded the certificate of nomination to such candidate whose nomination is contested. Said notice shall be served in the same manner as a summons from the circuit court, and shall warn the contestee of the time and place, when and where the contestee shall be required to answer and defend such contest, which shall not be less than three, nor more than ten days, after the service thereof.''

It therefore appears under these statutes that a person desiring to contest an election must, within five days from the time the certificate of nomination has been awarded to the successful candidate on the face of the returns, give notice in writing of his intention to contest the election; and so if certificates of nomination had

been issued by the election commissioners, as provided in subsection 26, on August 7th, the contestants must, under subsection 28, have given notice of their intention to contest on or before August 11th; but it appears that in this election the certificates of nomination were not issued by the board of election commissioners to any of the successful candidates, who are here contestees, until September 5, 1917. The reason why the election commissioners did not issue certificates of nomination until September 5, although on August 7th they had canvassed and tabulated the votes and ascertained and determined from this tabulation that the contestees had received a majority of the votes, was because the contestees did not file until September 5 the statements required by the corrupt practice act of 1916, that may be found on page 53 of the session acts of 1916.

It is provided in section 6 of this act that "Every candidate, as previously mentioned in this act, and every campaign committee, person or persons in charge of said campaign, shall, within thirty days after the election, caucus, convention or primary election held to fill any office or place for which such person may be a candidate, make out and file with the officers above mentioned a statement subscribed and sworn to as indicated in previous sections, which statement shall set forth in detail all sums of money contributed, disbursed, expended or promised by him, and to the best of his knowledge and belief, by any person in his behalf, wholly or in part, endeavoring to secure his nomination or election to said office, and also all sums of money contributed, disbursed, expended or promised by him in support and in connection with the nomination or election of any other persons at such election, primary, caucus or nominating convention showing the dates when, persons to whom, and the purpose for which all such sums were paid, expended or promised; provided, however, that the statement provided for in this section shall relate to matters occurring after the filing of the first statement provided for in this act."

It is also provided in section 7 that "No officer or board authorized by law to issue certificates of election or nomination shall issue any such certificates to any person until the statements required by this act shall have been made and filed as required."

And in section 9 that "No person shall be permitted to qualify as an elective officer or receive a cer-

tificate of nomination until he shall have filed the statements as provided by this act, and no officer shall receive any salary or emolument for any period prior to the filing of such statements.''

It will be seen from these sections of the corrupt practice act that the election commissioners were prohibited from issuing certificates of nomination to these contestees until the post-election statements required by the act had been filed, and as this statement was not filed by any of the contestees until September 5, the election commissioners did not and could not, until after this date, or on this date and after the statements had been filed, issue the certificates of nomination, and the contestants being of the opinion that they could not institute a contest until after certificates of nomination had been issued by the election commissioners, delayed giving the notices of contest until September 5th, and after the certificates of nomination had been issued. The trial court, however, was of the opinion that the notices of contest should have been given within five days from the time when the election commissioners canvassed and tabulated the vote and ascertained and determined from this canvass and tabulation that the contestees had received a majority of the votes, which was on August 7th, although they did not then or until September 5, for the reasons stated, issue certificates of nomination. If the position taken by the trial court was correct, there can be no doubt that it was properly ruled that the court had no jurisdiction to hear or determine the contest, because the giving of the notice of the contest within the five days fixed by the statute is necessary to confer jurisdiction on the circuit court to hear and determine the case. In other words, the giving of the notice of contest within the time prescribed by the statute is a jurisdictional prerequisite and if the notice is not given within this time, the circuit court has no jurisdiction to hear or determine the case. Price v. Russell, 154 Ky. 825; Baxter v. Watts, 155 Ky. 12; McKay v. Grundy, 155 Ky. 115; Edge v. Allen, 166 Ky. 291.

If, however, the notice of contest need not be given until five days from the time the certificate of nomination is actually issued by the election commissioners, then the ruling of the trial court was erroneous, because the required notice was within five days from the date of the issual of the certificate of nomination.

Except for the provisions of the corrupt practice act as to the issual of certificates of nomination, the issue arising on this branch of these cases could not have come up, because subsection 26 of the primary election law makes it the mandatory duty of election commissioners to issue the certificate of nomination immediately after they have canvassed and tabulated the returns, and this canvassing and tabulation they must proceed with on the third day after the election. And so putting out of view for the moment the corrupt practice act, we may assume that the certificates of nomination would have been issued on August 7th, and that within five days from that time the notices of contest would have been given as provided in subsection 28 of the primary election law.

It may again be observed that subsection 28 of the primary election law provides that the notice of contest must be given within five days "from the time the election commissioners shall have awarded the certificate of nomination," and if this statute should be construed to mean that no cause of contest vests in the contestant until after the certificate of nomination has been actually issued and the certificate cannot be issued until the successful candidate has filed the statement required by the corrupt practice act, it is manifest that the commencement of contest proceedings might be delayed until thirty days after the election, as the successful candidate has until that time to file a statement. And it is charged in this case that the successful candidates delayed filing the statements required by the corrupt practice act until September 5 in order to obstruct and delay the commencement of contest proceedings, and whether this charge is well founded or not, it serves to illustrate that the successful candidate might by failing to file a statement of expenses until the last day allowed by the corrupt practice act obstruct for about 30 days the beginning of a contest suit against him, and when the short time in which contested primary election cases must be finally disposed of is kept in mind, it will be at once seen that the obstruction for this length of time of the right to begin contest proceedings would seriously interfere with, if not entirely defeat, the right of the contestant to have his case finally decided in time, if he was successful, to have his name put on the ballot for the November election.

The legislature, in providing for primary election contests, recognized the imperative necessity for speedy action by both parties as well as by the courts, so that the case might be finally decided in time to allow the contestant, if successful, to avail himself of the benefits of the decision, and to accomplish this purpose has specified with particularity the short time in which the pleading must be made up and the evidence taken, and has directed that these cases shall, both in the lower court and in this court, have precedence over all other cases.

In view of this legislative purpose so plainly expressed, and the good reasons for it, we do not think that it was intended by the corrupt practice act to permit the successful candidate to delay contest proceedings by failing to file until the last day allowed his statement of expenses, and in this way interfere with or prevent the contestant from having a speedy decision of his case, so that if successful a decision would be of no benefit to him. Therefore, we are not disposed to hold that the corrupt practice act intended to or does modify or amend the provisions of the primary election law in respect to the time when an election contest must be commenced. In our opinion, it is not necessary that contest proceedings should be delayed until a certificate of nomination has been actually issued by the election commissioners. We think that when the election commissioners have canvassed and tabulated the vote and it is ascertained by this canvass and tabulation which candidate has received the majority of the votes, the opposing candidate may at once, and must within five days thereafter, begin his contest proceedings, although no certificate of nomination has been issued. When the election commissioners have canvassed and tabulated the vote and ascertained who has received a majority of the votes, their duties, except to issue a certificate of nomination, are at an end, and they must award the certificate of nomination to the candidate who as shown by the canvass and tabulation of votes has received a majority of them, when this candidate files his statement of expenses as provided in the corrupt practice act.

Subsection 28 of the primary election law does not say that the contest proceedings shall not be commenced until after a certificate of nomination has been issued, but provides that the contest shall be commenced "within five days from the time the election commissioners shall have awarded the certificate of nomination." And, ac-

cording to our view, the certificate for purposes of contest should be treated as awarded when it has been ascertained by a canvass and tabulation of the votes who the successful candidate is, although the certificate may not then be issued. When the canvass and tabulation show that a certain candidate has received the majority of the votes, he is then entitled as a matter of right to a certificate of nomination, and if he fails to ask for it, or fails to comply with other provisions of the law necessary to enable him to get it, this action on his part should not be allowed to obstruct the right of a contestant to commence proceedings against him. It is not within the contemplation of either the primary election law or the corrupt practice act that a candidate who is successful on the face of the returns should have it in his power to obstruct or defeat by his own act the commencement of or successful prosecution of an action against him by a person contesting his right to the nomination for the office.

The argument is made that the certificate is the only evidence of title to the nomination, and that until the certificate is issued no one has the nomination, and hence there cannot be a contest instituted until the certificate has been issued.

It may be admitted that for many purposes the certificate is the evidence of title to the nomination and that without a certificate the candidate for many purposes should not be treated as the nominee, with the rights and privileges that attach to a regular nomination, but yet we think the actual issual of a certificate is not a prerequisite to the commencement of an election contest. The right to begin this contest grows out of the fact that the candidate whose nomination is contested has received on the face of the returns as made by the election officers a majority of the votes, and this fact has been ascertained and determined by the election commissioners, because the person who is found to have received a majority of the votes is entitled as a matter of right to have the certificate, provided he desires it and files the statement required by the corrupt practice act.

If the issual of a certificate were an indispensable prerequisite to the bringing of a contest suit, the election commissioners might delay the issual of a certificate until it was too late to bring a suit that would avail anything, although it is true they might be compelled by mandamus proceedings to issue one. But we repeat that

the primary election law does not specifically provide that contest proceedings shall not be started until after a certificate has been issued. The intent of this statute is that the contest shall be commenced within five days from the time the commissioners should have awarded the certificate; that is to say, within five days from the time when the returns were canvassed and tabulated and the result ascertained.

The next question grows out of the failure of the contestants to execute supersedeas bonds. It is provided in subsection 28 of section 1550 of the Kentucky Statutes, which subsection prescribes the procedure in contested election cases, that "The party desiring to appeal from the judgment of the court shall, on the same day after the same is rendered, execute a supersedeas bond in the same form and to the same effect as other supersedas bonds in other civil actions for an appeal to the Court of Appeals." A motion has been made by appellees (contestees) in this court to dismiss the several appeals because no supersedeas bonds were executed in the lower court. In reponse to this motion the appellants (contestants) tendered supersedeas bonds in this court, and have attempted to excuse their failure to execute bonds in the lower court for the following reasons: They say that the judgments prepared by the circuit judge were handed down on September 11th about four o'clock p. m., and then delivered to the clerk of the circuit court to be entered of record; that shortly after five o'clock on the same day the attorneys for the contestants went to the clerk's office and informed the clerk that they desired to execute supersedeas bonds, and were told by the clerk that he would be in his office after supper and take the bonds at any time before twelve o'clock that night; that relying on this assurance they went to the clerk's office with good sureties after supper and about 6:30 p. m., and offered to execute the bonds, but that the clerk refused to permit them to do so and closed his office and thereafter could not be found on that night, although diligent search was made for him.

In Smith v. Johnson, 161 Ky. 745, and Kash v. Strong, 165 Ky. 843, it was decided that the execution of this bond within the time prescribed by the statute was necessary to confer jurisdiction upon this court to review the decision of the lower court, and that when bond was not executed in the lower court, this court was without power

to allow it to be executed here, and the motion to dismiss the appeal must prevail.

It did not, however, appear in either of these cases that the failure to execute the bond in the lower court on the day the judgment was rendered was due to the action of the clerk in absenting himself from his office and thereby preventing the execution of the bond. It was not made to appear in either of those cases that there was any good reason or indeed any reason why the bond was not executed on the day the judgment was rendered, and we may assume that failure to execute it was due to oversight or neglect on the part of the contestant. But in this case it is made to appear that the contestants offered to execute the bonds on the day the judgment was rendered, but were denied the right to do so by the action of the clerk in purposely absenting himself from his office, which was in effect the same as if he had deliberately refused to take the tendered bonds.

The question now is, can the clerk by deliberately absenting himself from his office, or by closing his office, or by concealing himself, or by refusing to take the bonds, deprive the contestants of their right to take appeals? If this statute should be so strictly construed as that this court would not have jurisdiction under any conditions or under any circumstances unless the bond was executed on the day the judgment was rendered, it can readily be seen that in many cases the contestant, without any fault or neglect on his part, and although he may have made every reasonable effort to execute the bond on the day the judgment was rendered, would be denied the right of appeal by the conduct of the clerk, or by some other condition that could not be anticipated or provided against.

But we do not think the statute should be so strictly and harshly construed. Its purpose was to hasten the procedure in these cases and not to deprive the contestant of the right to appeal for the failure to execute a bond on the day of the judgment when by circumstances beyond his control he was prevented from executing it on that day.

In Powell v. Horn, 159 Ky. 532, we had before us a question involving the right to file a pleading in a contested election case within the time allowed by the statute, which specifically fixes the time in which pleadings must be filed in this class of cases. In holding that strict compliance with the statute was not indispensable in all

cases, and that if sufficient reasons were shown why a pleading not filed within the time provided by the statute, but very soon thereafter, should be permitted to be filed, it was said:

"When an answer or reply is offered to be filed after the statutory period has expired, it should be accompanied by affidavits or other proof showing good reasons why the pleading was not filed in proper time, for unless a good excuse is shown, the statute is peremptory and must be complied with. If, however, the answer or reply is filed very soon after it is due, and it affirmatively appears that a good excuse for the delay existed, arising out of unusual or extraordinary conditions appearing in the record as in this case, or due to accident or surprise which ordinary prudence could not have guarded against, or resulting from unavoidable casualty or misfortune, and also that the substantial rights of the adverse party were not prejudiced by the delay, we think the matter of allowing or refusing to permit the pleading to be filed is within the sound discretion of the trial court. But nothing short of an excuse resting on one of these grounds will be available or deemed sufficient to avoid the statute."

In Creech v. Brock, 159 Ky. 739, it was held that where sufficient reason was shown for the delay this court might extend the time of filing a transcript in an election contest case, although the statute provides that the record must be filed within a specified time, saying:

"When from the size of the record or some misfortune or casualty it is utterly impossible to obtain and file a transcript within thirty days, justice would be defeated if no extension of the time could be allowed. The purpose of the statute is not to defeat justice, but to secure a speedy determination of the case. It provides for a judicial decision of the controversy, and the judicial proceeding must be subject to the control of the court, in the absence of something in the statute denying this power. If we held otherwise the purpose of the statute in allowing an appeal to this court would be defeated in all cases where it was for any cause impracticable to file the transcript within thirty days. We, therefore, conclude that the court may for sufficient cause extend the time for filing the transcript."

The statutory requirement prescribing the time when the pleadings and transcript shall be filed is as mandatory as the requirement when the bond shall be exe-

cuted, and there is no good reason why the rule announced in these cases should not be applied here. No litigant should be denied the right to prosecute an appeal on account of his failure to execute a bond within the time allowed when this failure is due to casualty or misfortune or circumstances beyond his control, and the delay will not prejudice the substantial rights of his adversary. Com. v. Weissinger, Judge, 143 Ky. 368; Chicago Life Ins. Co. v. Robertson, 147 Ky. 61.

We, therefore, hold that when it is made to satisfactorily appear that the contestant was prevented from executing the bond on the day the judgment was rendered by unavoidable casualty or misfortune, or by accident or surprise which ordinary prudence could not have guarded against, or by circumstances beyond his control, he may execute the bond on the day following and it will have the same effect as if executed on the day the judgment was rendered. But the application of this rule to the facts of this case does not help the appellants, because they did not on the following day or indeed at all thereafter execute or attempt to execute before the clerk the supersedeas bonds.

It results from the foregoing views that the judgment of the court in dismissing the contest proceedings was correct and that the appeals must be dismissed for failure to execute the required bonds. Wherefore, the appeals are dismissed.