## Lay v. Rose.

(Decided October 23, 1917.)

### Appeal from Whitley Circuit Court.

1. Elections—Record of State Board of Election Commissioners Showing That Returns Were Canvassed.—A record of the state board of election commissioners reciting that "It appearing from the certificates returned that R. S. Rose received the highest number of votes for the Republican nomination for circuit judge," shows that the returns were canvassed and the result of the election ascertained and determined by the board, although no certificate of election was then issued.

2. Elections—State Board of Election Commissioners—Powers and Duties of.—When it has been ascertained and determined by the board that a candidate has received a majority of the votes cast at an election, the board has no discretion to exercise as to whether they will issue the certificate of nomination or election to him; they must issue it. They have no power or authority to go behind the election returns or to question their verity or validity.

3. Appeal and Error—Case Must be Tried on Record Made up in Lower Court—Papers Cannot be Filed Here for the First Time.—Affidavits attempting to impeach the verity of the records of a board of election commissioners filed for the first time in this court are not entitled to any consideration. This court must decide cases upon the record as it is made up in the lower court, and this record cannot be added to or supplemented by papers or documents tendered in this court for the first time.

4. Elections—Contested Elections—Special Demurrer to Jurisdiction of Court.—The contestee may by a special demurrer, and without entering his appearance, question the jurisdiction of the court over his person, or over the subject matter of the action, or over both.

5. Elections—Contested Elections—Time When Notice of Contest Must be Executed.—A notice of contest must be given within five days from the time the board of election commissioners have ascertained from canvassing the votes who received a majority, although the certificate of nomination may not be issued on that day. The five days begin to run not from the time the certificate is issued, but from the time when the board has ascertained and determined by a canvass of the votes who has received a majority.

6. .Elections—Contested Elections—Giving of Notice of Contest in Proper Time Jurisdictional Fact.—The giving of the notice of contest within the time prescribed by the statute is a jurisdictional prerequisite, and if the notice is not given within this

time the circuit court has no jurisdiction to hear or determine the case.

7. Elections—Contested Elections—Presumption as to When Vote was Canvassed by Board.—When a notice of contest does not show on its face when the board of election commissioners canvassed the election returns, the legal presumption is that they performed this duty on the day designated by the statute.

8. Elections—Contested Elections—When Question as to Jurisdiction of Court May Be Raised.—Whether the contestee may raise at any time the question of the jurisdiction of the court, or whether he will be deemed to have waived his right to so object by failing to make his objection in seasonable time, is a question not decided.

9. Elections—Contested Elections—Demurrers, Motions, Pleadings, and Responses—When Must Be Filed.—When a judge is present on the day the contestee is required to respond, he should file in court all motions, demurrers and pleadings, and the contestant should likewise file in court such pleadings, motions and demurrers as he desires to file. But if a judge is not present on the day the contestee must answer, he should file such demurrers, motions and pleadings in the clerk's office of the circuit court, and within the time allowed by the statute, and the contestant should likewise file in the same office and within the time allowed such motions, demurrers and pleadings as he desires to file.

10. Elections—Contested Elections—When and How Evidence Must be Taken.—If a judge is present when the issues are made up, the evidence should be taken in such manner as he may direct, as provided in subsection 28 of section 1550 of the statutes; but if the judge is not present when the issues are made up, the contestant should immediately begin to take his evidence by depositions and complete his proof within the time allowed by the statute, and the contestee should take his evidence in the same manner within the time allowed, and when the evidence, on account of the absence of a judge, is so taken, the judge who hears the case should permit it to be read, subject to exceptions for lack of competency.

11. Elections—Contested Elections—Filing Answer or Other Pleadings in Clerk's Office Will Not Waive Demurrer or Other Preliminary Motions.—If, on account of the absence of a judge, the contestee must file his answer in the clerk's office, he will not by so doing waive his right to rely upon demurrers or motions that he has filed before or simultaneously with his answer; and neither will the contestant in filing his reply be deemed to have waived any preliminary motions that he may have filed with his reply.

12. Elections—Contested Elections—Place Where Notice of Contest Should Require Contestee to Answer.—The place where the contestee must answer is the clerk's office of the circuit court of the county in which the proceeding is instituted, and this is the

place where all subsequent motions, pleadings and demurrers by both parties must be filed when the court is not in session.

H. H. OWENS, HENRY C. GILLIS, BEN GOLDEN and ELI H. BROWN for appellant.

H. C. CLAY, W. R. HENRY, A. T. SILER and R. L. POPE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

·At the August, 1917, primary election W. R. Lay, R. S. Rose and J. C. Bird were candidates for nomination for the office of circuit judge in the 34th judicial district, composed of the counties of Whitley, Knox and McCreary, and Lay, who was defeated on the face of the election returns, contested the nomination of Rose, who, as between himself and Lay, received a majority of the votes.

It may here be stated as a conceded fact that at this election R. S. Rose received a plurality of the votes cast as shown by the returns of the election officers and as shown by the ballots, which were counted by order of the court that heard this contested election case, and it was the judgment of the court on the whole case that Rose, having received a plurality of the votes, was the nominee of the Republican party for the office of circuit judge, and this fact was ordered to be certified to the Secretary of State. From the judgment Lay has prosecuted this appeal.

For reasons that will be later set out, it will only be necessary on this appeal to consider questions relating to the practice in contested election cases and questions involving the jurisdiction of the circuit court to hear and determine this class of cases.

The primary election was held on August 4, 1917, and it is provided in subsection 26 of section 1550 of the Kentucky Statutes that in primary elections for district offices like the one here in question the returns of the election officers shall be made to the Secretary of State; and that "on the 14th day after such primary nominating election the State Board of Election Commissioners shall meet at the Capitol and canvass the returns of said primary election that have been certified and filed with the Secretary of State. . . . And after they have completed the tabulation and canvass of the returns of said primary nominating election they shall immediately certify to the same, and they shall issue to that candi-

date of each political party receiving the highest number of votes for the office for which he was a candidate, a certificate of nomination."

Pursuant to this statute two, and a majority of the State Board of Election Commissioners, met in their office at the State Capitol, on August 18th, the day specified in the statute when they should assemble, and made the following order on their official record book: "At a meeting of the Board of Election Commissioners held at the office of the Chairman at Frankfort, Ky., on Saturday, August 18, 1917, pursuant to notice. Present, R. W. Keenon, Chairman, and R. C. Oldham, Commissioner.

"It appearing from the certificates returned that R. S. Rose, of Williamsburg, Ky., received the highest number of votes for the Republican nomination for circuit judge in the 34th judicial district, account of objection on the part of W. R. Lay, another candidate for said office, the certificate was not issued to said Rose, and the matter is postponed until Wednesday, August 22, 1917, at which time said objections will be heard. Ordered that the board adjourn."

The verity of this record is attested by T. W. Pennington, secretary, and R. W. Keenon, chairman, of the board.

It will be observed from this order that the board adjourned to August 22nd, but it appears from their records that they did not meet on that day, but did on August 24th, when the following order was made on their official record book:

"At a meeting of the Board of Election Commissioners held at the office of the Clerk of the Court of Appeals, and Chairman of the Board, on Friday, August 24, 1917.

"Present, R. W. Keenon, Chairman, R. C. Oldham, Commissioner.

"This day came R. S. Rose, who received the highest number of votes in the Republican primary held for circuit judge of the 34th judicial district of Kentucky and filed herein his statement of means expended in said election. There being no further objection, it is ordered that a certificate of nomination be issued to said R. S. Rose, which is done. Ordered that the board adjourn."

The verity of this record is attested by T. W. Pennington, secretary, and R. W. Keenon, chairman, of the board.

It appears from the order made on August 18th that the board on that day canvassed the returns and ascertained and determined from them that R. S. Rose received "the highest number of votes for the Republican nomination for circuit judge in the 34th judicial district," but that on account of the objection of W. R. Lay, a contending candidate for the office, the certificate was not then issued to Rose. It is further made clear by the order of August 24th that the reason why the certificate was not issued to Rose on August 18th was because Rose had not at that time filed the post-election statement of his expenses required by section six of the corrupt practice act, which act also provides that no board authorized to issue certificates of nomination shall issue the same until the statement of expenses shall have been made and filed as required. We make with confidence the assertion that the certificate was not issued to Rose on August 18th solely because he had not then filed his expense statement, because the order of August 24th recites that "This day came R. S. Rose, who received the highest number of votes . . . and filed herein his statement of means expended in said election. There being no further objection, it is ordered that a certificate of nomination be issued to said R. S. Rose, which is done."

At this point it is convenient to notice that on the hearing in this court the verity of the order entered by the Board of Election Commissioners on August 18th was sought to be impeached by affidavits tendered for the first time in this court, showing that the Board of Election Commissioners did not assemble on August 18th or make or enter the order their records show they did make and enter on that date; that they did not on that day canvass the returns or ascertain or determine that Rose had received a majority of the votes; that no meeting of the Board of Election Commissioners was held until August 24th, on which day the returns were canvassed, and from these returns it was on that day ascertained and determined that Rose had received, as shown by the official returns, a plurality of the votes, and thereupon the certificate of nomination was issued to him.

But we are not at liberty on the hearing of this case to consider at all the sufficiency of these impeaching affidavits or allow them any weight for the purpose intended, however much we might be disposed to do so. The record

made by the election commissioners and certified to as correct by the secretary and chairman of that board cannot be overthrown in this way. It is too well settled to need citation of authority that the Court of Appeals, except in cases where it is specifically provided, is not a court of original jurisdiction. It must decide cases like this upon the record as it is made up in the lower court, and the record so made up in the lower court cannot be added to or supplemented by papers or documents of any kind that are tendered and offered to be filed for the first time in this court.

If Lay had desired to attack the verity of the record made by the election commissioners on August 18th, he should and could have done so in the lower court, as a certified copy of this record was filed in the lower court by Rose, who relied on it as showing that the notices of contest came too late and that the circuit court had no jurisdiction of the contest. But having failed in the lower court to challenge the correctness of the record, it is too late to draw it in question by affidavits offered to be filed on the hearing of the case in this court.

Having this view of the matter, the only question before us on this issue is, does the record of the Board of Election Commissioners, made and entered on August 18th, show that on that date it was ascertained and determined by the board that Rose had received a plurality or the highest number of votes cast at the August election in the race for circuit judge?

It is earnestly insisted that the order of August 18th does not, with sufficient definiteness to make it binding, show that the board did on that day canvass the returns and ascertain and determine that Rose had received the highest number of votes, and this being so, we should look alone to the order made by the board on August 24th as fixing the time when it was ascertained and determined by the board that Rose had received the highest number of votes and was entitled to the certificate, which was then issued.

Under the circumstances of this case we would readily adopt this view if the orders of the board made on August 18th and August 24th could reasonably and fairly be construed to mean that the board did not canvass the returns or determine who was entitled to the certificate until August 24th, but we do not think these orders are fairly or indeed at all susceptible of being so construed. On the contrary, we think that the order of

August 18th shows plainly that on that day the board, did canvass the returns and ascertain and determine that Rose had received the highest number of votes.

If Rose had on August 18th filed his statement of election expenses, there can be no doubt that on this record the Board of Election Commissioners could have been compelled by mandamus to issue to Rose a certificate of nomination, as it shows the essential fact that on the election returns Rose had received a majority of the votes. This is all that the Board of Election Commissioners are required or authorized to find. Their duties begin and end with canvassing the election returns and ascertaining who has received a majority of the votes, and when this fact has been ascertained by them, they have no discretion to exercise as to whether they will issue the certificate or not; they must issue it. The board has no power to go behind the election returns or to question their integrity or validity. Their duties are strictly confined to a tabulation of the votes as they appear on the face of the election returns and to an ascertainment from this tabulation who has received a plurality or a majority, as the case may be.

The statute does not prescribe any form of entry to be made by the board showing that it has canvassed the returns and determined who has a majority of the votes. It merely provides in section 1550, subsection 26, that the county election commissioners shall "canvass the returns of said primary election and tabulate the same," and "such tabulation of votes" as is required to be returned to the Secretary of State shall be transmitted to him, and that the "State Board of Election Commissioners shall meet at the Capitol and canvass the returns of said primary election that have been certified and filed with the Secretary of State. . . . and after they have completed the tabulation and canvass of the returns . . . they shall immediately certify to the same and they shall issue to that candidate of each political party receiving the highest number of votes for the office for which he was a candidate a certificate of nomination." And so under very familiar rules governing the sufficiency of records made by boards such as this, it is plain that any entry officially made that shows in substance that a majority of the board were present at the time and place fixed for the meeting and that it was ascertained and determined from the returns of the election, by whatever name the board may de-

scribe them, who had a majority of the votes, will be sufficient. No technical requirements are to be observed and no particular form of expression is necessary. A substantial requirement with the statute is all that is needed.

The construction of the record of August 18th that we have adopted is further fully supported by the recitals of the record of August 24th, which show that the board had previously ascertained and determined that Rose had received the highest number of votes and that they did not on that day meet for the purpose of canvassing, nor did they canvass, the election returns, but only assembled for the purpose of issuing the certificate of nomination, which had not been issued on August 18th because Rose had not on that date filed his expense account. Indeed, there had never been any dispute about the fact that Rose on the face of the election returns had a plurality of the votes and a majority over Lay. This fact has always been conceded by Lay, who only objected to the issual of the certificate on August 18th because Rose had not then filed his statement of expenses.

Passing this question, it appears from the record that on August 25th there was delivered to Rose in person in the county of his residence, by the deputy sheriff, a notice of contest, which was filed in the office of the circuit clerk of Whitley county on August 25th, in which it was recited that "Contestee, R. S. Rose, is hereby notified and warned that he is required to answer and defend this contest in the Whitley county circuit court in the county courthouse, in the city of Williamsburg, Ky., before the Whitley circuit court and presiding judge of said court at ten o''clock a. m., on the 28th day of August, 1917."

It further appears that counsel for Lay, apprehending that the notice given to Rose on August 25th was open to objection because Rose was notified to respond at an earlier date than the statute prescribed, prepared on or before August 28th another notice of contest which was on that date executed on the wife of Rose and filed in the circuit clerk's office of the Whitley county circuit court on August 29th. The officer executing this notice certified that after making efforts to find Rose in Whitley county and not being able to do so, he delivered the notice to his wife at the residence of Rose.

On August 28th Rose filed in the clerk's office of the Whitley circuit court the following special demurrer to the notice of contest delivered to him on August 25th:

"Comes the contestee, R. S. Rose, and without entering his appearance herein, but appearing for the purpose of this special demurrer, and for no other purpose, demurs specially to the notice and statement of grounds of contest herein because neither the Whitley circuit court and the presiding judge of said court or either has jurisdiction of the alleged contest or of the subject matter involved herein."

It further appears that on September 1, 1917, without entering his appearance, Rose filed in the office of the Whitley circuit court a motion to quash the service of the notice delivered to his wife on August 28th upon the ground that the service was insufficient and upon the further ground that "neither the Whitley circuit court nor the presiding judge of said court has jurisdiction of the alleged contest or has acquired such by the attempted service of said notice herein."

No other notices, motions, orders or pleadings were filed in the case until September 28, 1917, when Rose, without waiving his special demurrers or motions to quash, filed his responses to the notices of contest.

The reason why no steps were taken in the case until September 28th was because the regular judge of the Whitley circuit court declined, on August 28th, to preside in the case, and it appears that the services of a special judge were not secured until September 28th, when for the first time the judge who heard and disposed of the case in the lower court sat. It further appears that on September 28th the special demurrer of Rose drawing in question the jurisdiction of the court, which had been filed in the clerk's office on August 28th, was overruled, to which order an exception was saved; and that on September 29th the motion of Rose to quash the return of the execution of the notice which was handed to his wife on August 28th was also overruled, to which ruling he excepted. It further appears that on this day another special demurrer filed by him on this date drawing in question the jurisdiction of the court was also overruled.

As we have heretofore stated, it was ascertained and determined by the Board of Election Commissioners on August 18th that Rose had received on the face of the returns a plurality of the votes, and therefore on that

day was entitled to a certificate of nomination, which was withheld solely because on or before that day he had not filed his statement of expenses as required by the corrupt practice act.

The contest statute, which may be found in section 1550, subsection 28, of the Kentucky Statutes, provides that "Any candidate wishing to contest the nomination of any other candidate who was voted for at any primary election held under this act shall give notice in writing to the person whose nomination he intends to contest, stating the grounds of such contest, within five days from the time the election commissioners shall have awarded the certificate of nomination to such candidate whose nomination is contested." And we held in Ward v. Howard, 177 Ky. 38, that under this statute the notice of contest must be given within five days from the time the Board of Election Commissioners have ascertained by a canvass of the votes who received a majority, although the certificate of nomination may not be issued on that day, saying:

"In our opinion, it is not necessary that contest proceedings should be delayed until a certificate of nomination has been actually issued by the election commissioners. We think that when the election commissioners have canvassed and tabulated the vote and it is ascertained by this canvass and tabulation which candidate has received the majority of the votes, the opposing candidate may at once, and must within five days thereafter, begin his contest proceedings, although no certificate of nomination has been issued. When the election commissioners have canvassed and tabulated the vote and ascertained who has received a majority of the votes, their duties, except to issue a certificate of nomination, are at an end, and they must award the certificate of nomination to the candidate who as shown by the canvass and tabulation of votes has received a majority of them, when this candidate files his statement of expenses as provided in the corrupt practice act." To the same effect is Matthews v. Stephens, 177 Ky. 143.

It has been further held in Price v. Russell, 154 Ky. 825; Baxter v. Watts, 155 Ky. 12; McKay v. Grundy, 155 Ky. 115, and Edge v. Allen, 166 Ky. 291, that "the giving of the notice of contest within the time prescribed by the statute is a jurisdictional prerequisite and if the notice is not given within this time, the circuit court has no jurisdiction to hear or determine the case."

It is, therefore, manifest from these decisions of the court that the first notice of contest executed on Rose on August 25th, was not within five days from the date when the time commenced to run, to-wit, August 18th, and of course as this notice was not executed in time, neither was the notice executed on August 28th, assuming for the present that the service of this notice was good.

It necessarily follows from this that the circuit court did not have jurisdiction to hear and determine the contest unless it be, as contended by counsel for Lay, that Rose waived his right to object to the jurisdiction of the court, or did not in proper form or manner present his objections to the jurisdiction of the court.

It will be seen from what has been heretofore said that Rose, on the day he was required to answer the first notice, filed in the clerk's office of the Whitley circuit court his special demurrer challenging the jurisdiction of the court; that on the day he was required to answer the second or amended notice of contest he filed in the clerk's office of the Whitley circuit court his motion to quash the return of the execution of the notice, and his objection to the jurisdiction of the court, and that again at the first opportunity after a judge had been secured to try the case, he filed other special demurrers challenging the jurisdiction of the court.

It is argued, however, by counsel for Lay that as the notices of contest did not show on their face when the Board of Election Commissioners canvassed the election returns and ascertained and determined who had received a majority, or plurality, of the votes, the objection to the jurisdiction of the court could not be raised by special demurrer. But this objection is not available because in the absence of a showing on the face of the papers when the Board of Election Commissioners canvassed the returns and determined who had received a majority, or plurality, of the votes, the legal presumption is that they performed this duty on the day designated by the statute, which in this case was August 18th.

Without determining the question whether a contestee in a contested election case may raise at any time the question of the jurisdiction of the court, or whether he will be deemed to have waived his right to so object by failing to make his objection in seasonable time, we are of the opinion that Rose by these various demurrers and motions saved in every way that he could, and in

seasonable time according to the correct practice, his objections to the jurisdiction of the court.

Coming now to other questions of practice:

It is provided in subsection 28 of section 1550 of the statutes that when a notice of contest is filed, or rather returned to the office of the circuit clerk, "it shall be the duty of the clerk of the circuit court to immediately docket said cause and to immediately notify the presiding judge of the circuit court of said county that such contest has been instituted." And if the services of the circuit judge of the district, or those of a special judge, could be secured to hear the case on the day the contestee was required to respond, the proper practice would be for the contestee to file in court all of the motions, demurrers, pleadings and responses he desired to file, and for the contestant to file in court all of the pleadings, motions, and demurrers he desired to file.

But this case illustrates that it may happen that the services of a judge cannot be promptly secured, as was intended by the statute, and therefore when a judge is not present on the day the contestee must answer, he should file such demurrers, motions, responses and pleadings as he desires to file in the clerk's office of the circuit court, and within the time allowed by the statute, and the contestant should likewise file in the same office, and within the time allowed by the statute, such motions, demurrers and pleadings as he desires to file, to the end that the parties may not on account of the absence of a judge be subjected to the unfortunate delay that occurred in this case. Weller v. Muenninghoff, 155 Ky. 77; Butler v. Roberson, 158 Ky. 101.

It is of vital importance to the parties and especially the contestant, that the pleadings should be made up in these contested election cases as speedily as possible and within the time specified in the statute, so that if evidence is to be heard the parties will have time and opportunity to introduce it.

Subsection 28 of section 1550 of the statutes further provides that "In trying such contests the court shall hear and determine all questions of law and fact without the intervention of a jury and may examine the witnesses orally or require the parties to take the evidence by depositions, in the discretion of the court, or as may be agreed by the parties." And if the judge is present when the issues are made up, of course, this statute controls the practice, but if it should happen, as in this

case, that the services of a judge could not be secured for many days after the issues should have been made up, it is manifest that if the parties were required to wait the pleasure of the judge as to how the evidence should be taken, it would delay the hearing of the case to such an extent as to make it impracticable to give to it proper consideration. To obviate this difficulty in the way of a speedy and satisfactory hearing of the case, we think that when the services of a judge have not been secured at the time when by the statute the pleadings should have been made up and the taking of evidence commenced, the contestant should immediately begin to take his evidence by depositions and complete his proof within the time allowed by the statute, and the contestee should take his evidence by depositions within the time allowed, and each should also, within the time allowed by the statute, take their evidence in rebuttal. If on account of the absence of a judge at the time fixed by the statute when the taking of evidence must commence, the evidence is taken as we have indicated by depositions, then the judge who hears the case should permit all the evidence that has been taken by depositions to be heard, subject of course to exceptions for relevancy and competency.

It might in this connection be further said that if the contestee, on account of the absence of a judge, must file his response and counter-contest in the clerk's office, he will not by so doing waive his right to rely upon demurrer or motions to strike or other motions affecting the jurisdiction of the court or the sufficiency of the pleadings or the sufficiency of the service of notice which have been filed before or simultaneously with the response and counter-contest; and neither will the contestant by filing his reply be deemed to have waived any motions or demurrers that he may have filed before or with his reply: Ward v. Howard, 177 Ky. 38.

The question is raised as to the particular place the notice shall warn the contestee that he must answer. The only provision regulating this subject to be found in the statute is that the notice "shall warn the contestee of the time and place when and where the contestee shall be required to answer and defend such contest." We think that the place where the contestee must answer is the clerk's office of the circuit court of the county in which the proceeding is instituted, because this is the place where the notice of contest, after it has been exe-

cuted, must be returned by the officer; and when the court is not in session this is the place where all subsequent motions, demurrers and pleadings should be filed.

Some other questions of practice are raised in the briefs of counsel, but we think all of them have been disposed of in opinions handed down by this court.

Wherefore the judgment is affirmed. Whole court sitting, except Judge Sampson. Judge Hurt dissenting.

### DISSENTING OPINION BY JUDGE HURT.

I concur in the opinion of the court, that it is necessary, in order to give the circuit court jurisdiction of either the subject matter of a contest of a nomination, by a primary election, of a candidate for office, or of the person of a contestee, that the contestant shall give notice of his intention to contest "within five days from the time the election commissioners shall have awarded the certificate of nomination to such candidate whose nomination is contested," as provided in the statute, but I respectfully dissent from the conclusion arrived at by the court, that the memorandum, apparently made by a majority of the Board of Election Commissioners and signed by its secretary and attested by its chairman, on the 18th, 22nd, and 24th days of August, when taken together, conclusively show, a canvass and tabulation of the votes by the Board of Election Commissioners, showing that a majority had been received by appellee, or a final decision by the board that a certificate of nomination should be awarded to the appellee, Rose, on the 18th day of August, or at any earlier period than the 24th day of August, and hence, I dissent from the conclusion reached, that the notice executed upon contestee upon the 25th day of August did not give the circuit court jurisdiction to hear and determine the contest. I, also, dissent from the opinion of the court as to the effect of the special demurrer filed by contestee on the 28th day of August. I refrain from stating with any further particularity my views of the questions, or the reasons, which impel me to the conclusions, which I have reached, contrary to the opinion of the court, because to do so would be neither profitable to the administration of the laws nor to the litigants, as my individual views of the questions involved, in opposition to the opinion of the court, which is effective, could be of no value and of no public interest.