## Hall v. Martin.

### (Decided January 31, 1919.)

### Appeal from Floyd ·Circuit Court.

1.   Elections—Action to Set Aside—Policy of the Courts.—It is the policy of the courts to uphold the validity of elections, and before they can be set aside for fraud or other invalidating facts the proof should be clear and conclusive of the existence of such facts; and notwithstanding there may be proof of the deposit of fraudulent votes in the ballot box, if the number of such votes can be ascertained from the evidence, and it can further be determined for whom they were cast, they will be deducted from the total vote received by the person or measure for which they are cast, rather than to declare the election void.

2.   Elections—Bribery—Evidence.—The fact that a worker for a candidate in the election was seen to have distributed money among five or six voters who it is claimed thereafter voted the second time is only evidence of bribery and fraud and is not of itself sufficient to throw out the vote of that precinct in the absence of some testimony to show that such voters were improperly influenced to and did vote as a result thereof, especially so as to another candidate in no way connected with the suspicious circumstances.

3.   Elections—Challengers and Inspectors.—Neither the fact that a challenger or inspector is a non-resident of the precinct, although a resident of the county, nor the further fact that after the polls closed the ballot box was taken to a nearby place where the votes were counted and where there was both light and heat, neither of which was obtainable at the polling place, is sufficient to render the election at that precinct void so as to require that it be entirely rejected.

4. **Elections—How Conducted.**—By section 147 of the Constitution and Statutes enacted pursuant thereto, elections are required to be by secret ballot, and if the legal requirements for that purpose are violated to such an extent that as many or more than twenty per cent. of the voters cast their votes openly without being sworn as required by law, the election would have to be declared void.

5. **Elections—When Contest Will Fail.**—Notwithstanding it appears from the proof that the number of illegal votes alleged were cast, still if contestee has a majority, after deducting such votes, relief will be denied the contestant and his petition will be dismissed.

EDWARD C. O'REAR, J. C. JONES and ROSCOE VANOVER for appellant.

C. B. WHEELER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming on the appeal and reversing on the cross appeal.

This litigation is a contest over the office of jailer of Floyd county. The appellant, Hall, and appellee, Martin, were rival candidates for the office at the regular November, 1917, election, the former being the Republican candidate and the latter the Democratic candidate. There were canvassed and certified by the election officers of the various precincts 2,061 votes as having been cast for appellee, and 1,941 votes cast for appellant, giving the appellee a majority of 120 votes. In due time the canvassing board of the county met and verified the result of the election and found in the jailer's race as certified by the election officers.

Within the time required by law, but before any certificate of election was issued, this suit was filed by appellant as plaintiff contesting the election of appellee and defendant upon various grounds alleging fraud and irregularities which if true resulted in illegal votes being counted and certified for defendant in a greater number than his apparent majority, and that he (appellant) obtained a majority of the legal votes cast in the election and should be declared the duly elected jailer of the county.

Defendant insisted that the contest was prematurely filed, it being claimed that under the provisions of subsection 12 of sec. 1596a of the Kentucky Statutes the suit was not maintainable until after the canvassing board had issued its certificate of election. That section

provides that the contest shall be instituted within ten days "after the final action of the board of canvassers," and under the doctrine announced in the case of Ward v. Howard, 177 Ky. 38, such "final action" for the purpose of contest proceedings is held to mean the time when the board ascertains the result of the election and not when it issues its certificate of election. Under the ruling of that case this contention can not be considered.

The answer denied the allegations of the petition and included paragraphs containing counter grounds of contest. Various motions were made and amendments filed, and after the parties had taken their proof and the cause submitted, the petition was dismissed, and to reverse that judgment this appeal is prosecuted, and defendant has prayed and obtained a cross appeal.

In the petition general charges are made that in the election more legal votes were cast for plaintiff than were cast for defendant; that the officers of election fraudulently counted and certified votes in the jailer's race for defendant, and that a true and correct count of the ballots would show that plaintiff was duly elected to the office; that bribery had been resorted to by defendant, or by his friends with his knowledge and consent, to such an extent as to render the votes cast for him void, and in addition to such general allegations the plaintiff further charged that in Martin precinct there are not more than three hundred legal voters and that all of the votes which defendant received therein were cast for him openly on the table without the voters being sworn as required by law; that one Tom Lawhorn was permitted without right to go into the polling place at all times during the day while the election was being conducted in that precinct, he as alleged not being a citizen either of the county or the precinct, and that he bribed persons to vote for the defendant; that at least fifty votes in that precinct were fraudulently cast for the defendant through fictitious names gotten up by the election officers, or that number were cast by persons who were non-residents of the district, or under twenty-one years of age, or who were for other reasons illegal voters, but which one plaintiff does not know; that there was a conspiracy in the Martin precinct between defendant and the Republican candidates for the offices of sheriff, representative in the legislature and county attorney to wrongfully, illegally and corruptly "steal the

election'' at that precinct, and that the officers at that precinct after the closing of the polls wrongfully, illegally and fraudulently removed the ballot box to another building located some 250 or 300 yards from the polling place, where the ballots were counted. The additional allegations are made that in a number of other named precincts at least fifty votes in each of them were wrongfully cast for defendant by being voted upon the table without the statutory oath being administered to the voter.

By way of counter contest the defendant charged that the election in Clear Creek and Antioch precincts should be set aside and held for naught for various reasons, chief among which was that the law requiring secrecy in the casting of ballots was wholly ignored, since more than one-half of the votes were cast upon the table without the voters being sworn as required by law, and that all the other votes cast in the Clear Creek precinct were subject to the same criticism because as alleged in that precinct there was no booth provided, nor any place wherein the voter might secrete himself for the purpose of marking his ballot. Amended pleadings attempted to name the number of votes charged by such general allegations to have been illegally cast, and by whom cast, and in arriving at the judgment appealed from the court threw out entirely the Martin and Clear Creek precincts, reduced the vote of each candidate at Antioch precinct forty-five per cent., that being the court's finding from the testimony of the number of votes cast upon the table without being sworn, and deducted from appellant some eighty odd votes in all the other precincts as having been cast for him openly without the voter being sworn, resulting in finding defendant elected by a majority of eleven votes. Appellant did not at the trial demand a recount of the ballots or offer to do so.

The chief complaint made by appellant on this appeal is error committed by the court in throwing out Clear Creek precinct, and in deducting from his total vote forty-five per cent, or any number of votes which he received at Antioch precinct, and in not deducting from appellee certain questioned votes in other precincts. By cross appeal appellee calls in question the judgment of the court in throwing out Martin precinct.

To undertake to discuss the various issues of fact touching each individual contested voter, and each piece of conduct claimed to constitute fraud, would carry this

opinion far beyond legitimate bounds, and is a task which we are disinclined to undertake, inasmuch as we have concluded that the court was in error in throwing out Martin precinct. With this precinct counted, and deducting from the votes certified in that and other precincts as having been received by each candidate all illegal votes properly pleaded and in support of which there is any testimony, defendant will then be found to have received a majority of the legal votes cast. In the Martin precinct defendant received three hundred and eighty-four votes and plaintiff eleven votes. Within the boundary of that precinct there are three mining towns, one or two of which have municipal organizations and a regular set of officers. Some eight or ten coal mines located therein are in active operation, and within the limits of the district, there is a population of between 2,500 and 3,000 people. These facts contradict the charge of an abnormally large vote polled there. The uncontradicted testimony shows that the defendant is related to a very large per cent. of the native voters in that district, and the Republican candidates with whom he is charged to have entered into a conspiracy also have an extensive number of relatives therein. The precinct is normally Democratic. There is some evidence of a mutual understanding that the relatives of the associated candidates would support each of them, and that neither would antagonize the other. In other words, the understanding went no further than that neither candidate in the combination would insist upon party lines, and that each would endeavor to secure for himself the influence and votes of the relatives of all, and thereby pool their combined strength for each of them. But it is not shown that even this much was agreed to or known by the appellee. There is no testimony to show that any fraud was perpetrated by any one in carrying out this understanding, which in itself is neither illegal nor fraudulent. It is insisted that the activities of Lawhorn in furtherance of the understanding constituted such fraud. The testimony shows that he, although a resident of the county, living at Prestonsburg, was not a resident of that precinct. However, he was appointed challenger for the precinct by the Republican county committeeman and held credentials from the Democratic committeeman as inspector for the precinct. The latter credentials were attacked, and it was shown that the Democratic county commit-

teeman appointed another as inspector for that precinct but the appointee declined to serve and inserted in the certificate of appointment the name of Lawhorn. We know of no law disqualifying a legal voter in the county from serving as challenger or inspector at any precinct therein.

There is testimony to show that about the noon hour of the day of the election Lawhorn was seen in conversation with four or five colored voters, and to have given money to some of them. This, however, is denied by Lawhorn. Whether true or not, the fact remains that not a syllable of testimony connects Lawhorn with the defendant. On the contrary, it is shown that he was interested only in the election of the candidate for sheriff and perhaps the one for county attorney. Nothing fraudulent whatever is shown by the testimony to have occurred at the polling place. It is not shown that Lawhorn or any of the election officers did anything at the polls that in the least smacked of fraud, either in the way of bribing voters or in any other particular charged as a ground of contest. If it be conceded that Lawhorn did distribute money to a small number of colored voters, and that he did so for fraudulent purposes, it is not shown by any testimony that such purpose was accomplished or that any such acts were fruitful in causing any ballots to be deposited in the ballot box. On the other hand it is testified to by the officers of the election that when about that number of colored people attempted to vote the second time they were not allowed to do so and were ordered out of the polling place. If, however, we discard all of this testimony and concede that these six or seven voters wrongfully voted the second time, then, as we shall hereafter see, the result of the election is not affected.

By an amended petition plaintiff undertook to set out the names of the persons whom he claims constituted the fictitious, repeated and other illegal votes which were cast in the Martin precinct. These aggregate one hundred and six votes, and if all of them were conceded to be proven illegal, as alleged, and all of them charged to defendant, he would then have a majority of two hundred seventy-eight votes in that precinct, giving him a majority in the county of fourteen votes without making any allowance for illegal votes proven to have been cast for appellant at other precincts and relied upon in the counter contest.

We are not inclined to give the weight to the alleged fact of the removal of the ballot box for the purpose of counting the ballots which plaintiff insists upon. The facts about this matter are that the room in which the election was held, although provided with booths, was small and but one opening in it for the admission of light. At the time of the closing of the polls it was too dark in the room to enable the officers to count the votes, and they were without lamps. Futhermore, it was cold; they had neither stove nor fireplace in which a fire could be built. All persons present, including all of the election officers, agreed to adjourn to a comfortable room in a hotel some 250 or 300 yards away from the polling place. Not the slightest circumstance or suspicious fact appears in the testimony to show that this was resorted to for the purpose of or resulted in any fraud or dishonest act of any character. On the other hand, both Democrats and Republicans say that it was the only practical thing to do. While we would not be understood as giving our unqualified endorsement to the removing of the ballot box from the polls until after the vote has been canvassed and certified by the officers holding the election, yet under circumstances like those found in this record, when the act is shown to have been in perfect good faith, we can find no legitimate objection to the course pursued. It may be that it was upon this ground that the circuit court rejected in its entirety this precinct. But whether so or not, we are convinced that neither this nor any other ground relied on was sufficient for that purpose. If there exists such a disregard of the requirements of the law relative to guaranteeing fair and honest elections, and there appear such fraud, dishonesty and intimidation as to render the result of the election doubtful, courts not only have the right but it is their duty to adjudge the election in that particular precinct void. Before doing so, however, the evidence should point unerringly to the establishment of the invalidating facts. We find no such testimony in this case relative to Martin precinct. In fact, with the exception of the alleged activities of Lawhorn in connection with the half dozen or more colored voters, the record discloses nothing as occurring in that precinct out of the usual and ordinary, unless, as insisted, the removing of the ballot box for the purpose of counting the vote under the circumstances was not an ordinary proceeding.

With this view of the case it is really unnecessary to consider the facts relative to the votes cast in the other precincts involved. If, however, it were necessary to a decision of the case, we would be compelled to hold, under the doctrine announced in the cases of Harrison v. Stroud, 129 Ky. 193, and Cole v. Nunnelley, 140 Ky. 138, that the election in Clear Creek and Antioch precincts were void, since it is indisputably shown that in each of them anywhere from one-third to more than one-half of the votes cast were done so in the open, on the table, without any of the voters being previously sworn, and as stated in the cases referred to such a method of voting is illegal as violative of the provisions of sec. 147 of the Constitution providing for a secret ballot, and when as many as one-fifth (being the number in those cases) of the votes cast are voted in that manner, the election should be declared invalid.

In the Stroud case the testimony showed only about twenty per cent. of the voters in the precinct contested to have voted openly, upon the table, without being sworn, and in passing upon the effect which that fact had upon the election this court said: "And when the officers permit such numbers of voters to violate the secrecy of the ballot, as was done in this case, as to materially affect the result of the election, it is not a lawful election, and will be held void on that account. Attorney General v. Stillson, 108 Mich. 419, 66 N. W. 388; Sproule v. Fredericks, 69 Miss. 898, 11 South. 472. Such an election is but a partial election. Instead of ascertaining the popular will, it frustrates its legal expression. It would substitute the result of fraud or gross official ignorance and misconduct for the result of legal votes legally cast."

If we should apply the doctrine of that case to the facts proven with reference to Clear Creek and Antioch precincts, it would result in giving defendant some two or three hundred greater majority than the canvassing board awarded him, which majority would not be consumed by deducting from defendant's total vote all the legally contested votes in all other precincts in support of which plaintiff has introduced any evidence, and this, too, if Martin precinct be wholly rejected. In that event plaintiff's vote would be one thousand five hundred forty and that of defendant one thousand five hundred seventy-three, giving him a majority of thirty-three votes.

These conclusions render it unnecessary to consider other questions in the case, and the judgment on the appeal is therefore affirmed, and reversed on the cross appeal with directions to dismiss the petition.