## Colvin v. Mills.

(Decided June 1, 1926.)

Appeal from Pendleton Circuit Court.

1.  Elections.—Right to contest election is purely statutory.
2.  Elections—Statutory Provision as to Time for Instituting Contest is Mandatory, and Compliance is Necessary to Confer Jurisdiction.—Statutory provision as to time for instituting election contest is mandatory, and court is without jurisdiction to hear contest instituted after such time.
3.  Time—Day of Final Action by Board of Election Commissioners Must be Counted in Determining Whether Contest was Instituted in Time Prescribed (Ky. Stats., Section 1596a-12).—Day on which final action of county board of election commissioners is taken must be counted in determining whether county election contest under Ky. Stats., section 1596a-12, was instituted within time prescribed.
4.  Elections—Issuance of Certificate of Election is "Final Action" of Board of Election Commissioners Within Statute Requiring Contest Within 10 Days Thereafter in Case of General Elections (Ky. Stats., sections 1550-26, 1550-28, 1596a-5, 1596a-12).—As tabulation of vote and filing thereof in county court clerk's office by

board of election commissioners is not required by Ky. Stats., section 1596a-5, relating to general county elections, but only official record required is certificate of election, issuance of such certificate not such tabulation and ascertainment of result by board, as in case of primary elections under sections 1550-26, 1550-28, is "final action" of board within section 1596a-12, requiring contest within 10 days thereafter.

A. H. BAKER, T. E. KING and L. P. FRYER for appellant.

JOHN E. SHEPHERD and H. B. BEST for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

Appellant and appellee were the candidates of the two rival major political parties in Kentucky for the office of county judge of Pendleton county, at the general election held in November, 1925. Appellee was awarded the certificate of election by the county board of election commissioners. Appellant then instituted this contest for the office under the provisions of subsection 12 of section 1596a, Kentucky Statutes. Appellee interposed a special plea challenging the jurisdiction of the court upon the ground that contest was not instituted within ten days after "the final action" of the board of canvassers, as is required by the section above relating to contests. The trial court sustained that plea and dismissed appellant's petition. Hence the appeal.

The right of an unsuccessful candidate to contest the election of his successful rival is purely statutory and this court has uniformly held the statutory provision as to the time within which a contest may be instituted to be mandatory. Jurisdiction to hear and determine. a contest is conferred only when it is instituted within the time prescribed by the statute conferring the right of contest. A court is without jurisdiction to hear a contest instituted after the time prescribed. Then unless this contest was instituted within ten days after "the final action" of the board of canvassers, the trial court was without jurisdiction and properly dismissed the contest. The day on which "the final action" of the board is taken must be counted. Lowry v. Stotts, 138 Ky. 251, 127 S. W. 789.

It appears herein that the board of canvassers was engaged two days in the work of canvassing the returns from the election held in Pendleton county in November, 1925. It met first on November sixth. At the conclu-

sion of that day's work it adjourned to meet again
November ninth, at which time it reassembled and on
that day completed its work and issued the certificates
of election. In canvassing the returns the board seems
to have made a tabulation of the votes received by the
various candidates for the various offices precinct by pre-
cinct and to have placed at the foot of each table the
total vote each candidate received. That was done in
the county judge's race and the tabulation of the vote
in that race shows the total number of votes received
by each of the candidates, appellant and appellee, in
each precinct of the county, and the total in the county.
As so shown appellant received 1891 and appellee 1899
votes. There is considerable controversy herein, involv-
ing largely a question of fact, as to when the tabulation
so made was completed, whether on the sixth or the ninth
of the month. That controversy may be said to have
had its origin in opinions of this court construing the
words "final action of the board of canvassers" found
in the statute, *supra,* authorizing contests. Hall v.
Martin, 183 Ky. 120, 208 S. W. 417, and Thompson v.
Taylor, 184 Ky. 106, 211 S. W. 582. They were both
contests instituted under subsection 12, section 1596a,
relating to contests for an office following a general elec-
tion. In the former it was said:

"Under the doctrine announced in the case of
Ward v. Howard, 177 Ky. 38, such 'final action' for
the purpose of contest proceedings is held to mean
the time when the board ascertains the result of the
election and not when it issues its certificate of
election."

In the latter it was said:

"In Ward, etc. v. Howard, etc., 177 Ky. 38,
which involved contests for nomination to certain
offices under the general primary election law, we
held that although the primary election statute pro-
vides for the giving by the contestant to the con-
testee of a written notice of his purpose to contest
the latter's nomination and the grounds therefor
'within five days from the time the election com-
missioners have awarded the certificate of nomina-
tion to such candidate whose nomination is con-
tested,' it was nevertheless necessary that the notice
of contest be given within five days from the time
the votes are canvassed and tabulated by the election

commissioners, and it has been thus determined who received a majority of the votes, although no certificate of nomination has been issued by the election commissioners.

"No reason is perceived for holding that what was thus declared in the case, *supra,* to be the law is not equally applicable to a contest over an office for which the contestant and contestee were voted at a regular or general election. Indeed in Hall v. Martin, 183 Ky. 120, it was expressly so held."

In writing those two opinions the difference in the statutory provisions as to the duties of the board of canvassers or county board of election commissioners in canvassing the returns after a primary election and its duties in so doing after a general election was not called to the attention of and was overlooked by this court. In canvassing the returns from a primary election, by section 1550-26, Kentucky Statutes, the board's duties as relating to county races are thus defined:

"On the third day after the close of any primary nominating election the county election commissioners of each county shall proceed to canvass the returns of said primary election and tabulate the same. The tabulation of votes for all offices for which the nomination papers are required to be filed in the county court clerk's office shall be on another separate sheet of paper for each political party and shall be filed in the county court clerk's office immediately after the canvass of the returns and tabulation of the votes by said election commissioners; and certificates of nomination shall immediately issue to the persons receiving the greatest number of votes for the offices for which they were candidates."

That portion of the section read in connection with the provisions of subsections 5 and 7 of section 1565b, providing that candidates must file post election statements of expenses after a primary election, giving them thirty days in which to do so, and providing that the canvassing board may not issue certificates of nomination until the statement of expense has been filed, considered with the necessity for speedy institution and trial of contests for nominations in order that they may be determined in the trial and this court before the

general election, led to the conclusion reached by this
court in Ward v. Howard, 177 Ky. 38, 187 S. W. 506, that
a contest for a nomination under subsection 28 of sec-
tion 1550, Kentucky Statutes, which provides that it
must be begun "within five days from the time the elec-
tion commissioners shall have awarded the certificate
of nomination" must be begun within five days after the
board makes and files the tabulation provided for in
subsection 26 of that section, quoted *supra*.

With reference to general elections for county
officers, the duty of the board in canvassing the returns
is thus defined by section 1596a-5:

> "Within two days next after an election the
> sheriff shall deposit with the clerk of the county
> court the returns from the different precincts. On
> the next day the said county board of election com-
> missioners shall meet in the county court clerk's
> office between ten and twelve o'clock in the morning,
> open and canvass the returns of such election, and
> give triplicate or more written certificates of elec-
> tion, over their signatures, of those who have re-
> ceived the highest number of votes for any office
> exclusively within the gift of the voters of the
> county, one copy of the certificate to be retained in
> the clerk's office, another delivered to each of the
> persons elected, and the other forwarded by the
> county clerk to the secretary of state at the seat of
> government."

It is within ten days after such "final action of the
board" that under section 1596a-12 a contest for a county
office must be instituted. It will be observed that follow-
ing the general election the board is not required to
make or file in the office of the clerk a tabulation of the
vote as is required following a primary election. Under
the general election statute such tabulation of the vote
as the board may have to make in order to ascertain
who received the highest number of votes is not required
to be filed and does not become a public record. So far
as the statute provides when it has served its purpose
it may be destroyed. The only official record of its can-
vass of the vote in county races at a general election
which the board is required to make and file is the certifi-
cate of election, one copy of which it files, one of which
it forwards to the office of the secretary of state, and
one of which it delivers to the winner. The board being

required by the statute relating to primary elections to make an official tabulation of the vote which must immediately be filed in the county court clerk's office, from which and from the date of the filing of which it may be ascertained who has been nominated and the date on which that fact was officially determined, this court's conclusion that under section 1550-28 a contest for a nomination must be instituted within five days after the ascertainment of the result by the making and filing of the tabulation required by section 1550-26, is sound and will be adhered to hereafter for the reasons assigned in Ward v. Howard, *supra.*

In view of the fact that no such official tabulation is required to be made and filed by the statute relating to general elections, section 1596a-5, but that the only official record of its ascertainment of the result required is the certificate of election required to be issued in triplicate and disposed of as above mentioned, the conclusion that the "final action of the board," under section 1596a-12, means the tabulation of the vote and ascertainment of the result by the board as was written in Hall v. Martin, and Thompson v. Taylor, *supra,* is unsound. The certificate of election being the only official record of the result of the election required to be made and filed by the board, the issuing of such certificate only can be held to be the "final action of the board" within the meaning of section 1596a-12, which provides that a contest for an office within the gift of the voters of a county must be begun within ten days after the final action of the board of canvassers, and the cases holding otherwise are overruled.

Guided by the opinions which we hereby overrule, the trial court held that since it appears herein that the board did make a tabulation and concluded from the evidence that such tabulation was so far completed that from it the result of the election in the race for county judge was ascertained on November sixth, it was necessary for appellant to institute his contest within ten days thereafter, which he failed to do. Hence the trial court dismissed the petition. The certificates of election issued on November ninth, and the contest was begun within ten days thereafter.

For the reasons indicated the judgment is reversed and the cause is remanded for further proceedings consistent herewith. Whole court sitting. Judge Sampson dissenting.

### Dissenting Opinion by Judge Sampson.

Two substantial reasons influence me to dissent from the majority opinion.   That opinion is based upon a supposed distinction between the meaning of the language of section 1550-26 and section 1596a-5, Kentucky Statutes.   In substance, meaning and spirit these two sections are the same although their wording is somewhat different.   One relates to the time of instituting contests in primary elections, and the other to the same subject with respect to final or general elections.

For easy comparison of the two sections we set them out in parallel columns:

| Primary Elections. | General Elections. |
|---|---|
| Sec. 1550-26:<br>   "On the third day after the close of any primary nominating election commissioners  .   .   .   shall proceed to canvass the returns of said primary election and tabulate the same.   The tabulation of votes for all officers .   .   .   shall be on another separate sheet of paper for each political party and shall be filed in the county court clerk's office immediately after the canvass of the returns and the tabulation of the votes by said election commissioners; and certificates of nomination shall immediately issue to the persons receiving the greatest number of votes for the office for which 2they were candidates." | Sec. 1596a-5:<br>   "Within two days next after an election the sheriff shall deposit with the clerk of the county court the returns from the different precincts.   On the next day (the third day) the said county board of election commissioners shall meet in the county court clerk's office between ten and twelve o'clock in the morning, open and *canvass the returns* of such election, and give triplicate or more written certificates of election, over their signatures, of those who have received the highest number of votes for any office exclusively within the gift of the voters of the county." |

The majority opinion attempts to distinguish the two sections by calling attention to the fact that the one regulating primary elections calls for a tabulation of the votes and provides that the tabulation "shall be filed in

the county court clerk's office immediately after the canvass of the returns." This is not a distinction. The word "canvass" covers and includes the term tabulate, and the expression "canvass the returns of an election" means the inspection and counting of the ballots and a tabulation of the returns so that the result may be definitely known. There can be no canvass of the returns without an inspection and counting of the ballots and a tabulation of the results. So, when you read the two sections with this thought in mind and with the meaning of the word "canvass" clearly fixed, there is no distinction in their meaning. The mere fact that the section governing primary elections directs that "the commissioners shall proceed to canvass the returns of said primary election and tabulate the same," means no more than a direction to canvass the returns, and that is exactly what the section governing general elections required to be done. The sections differ only in their verbiage, not in their spirit or meaning.

"A 'canvass' of an election includes not only the counting of the votes by the inspectors, but the record of the count by the poll clerks upon the tally sheet, so that the tally sheet is a substantial part of a canvass. In Re Stewart, 48 N. Y. Supp, 957."

" 'Canvass,' as applied to an election, would seem to impose an obligation beyond that of merely counting the ballots and comparing the statements of the managers. 'Canvassing' implies searching, scrutiny, investigation, examination. State v. Herland, 7 S. C. 241."

"The term 'canvass' implies search, scrutiny, investigation, examination, and the term 'canvasser' employed to designate the duties of the commissioners would seem to impose an obligation beyond that of merely counting the ballots, and comparing the statements of the managers of the election. Ex Parte Mackey, 15 S. C. 322."

Indiana courts have held that the words "canvass" and "tabulate" were synonymous, it being said in an election case "the word 'tabulated,' as so used, was synonymous with 'canvass,' the duties of the canvassers being purely ministerial, consisting of the mathematical tabulation of the votes of the different precincts, as returned to them. Knuckle v. Coleman, 174 Ind. 315. See 20 C. J. 200."

The majority opinion further attempts to draw a distinction between the meaning of the sections by pointing to the filing of the tabulation, it being said, "the board being required by statute relating to primary elections to make official tabulation of the vote which must immediately be filed in the county court clerk's office, from which and from the date of the filing of which it may be ascertained who has been nominated, and the date on which that fact was officially determined."

That section also requires, as does the section concerning general elections, an immediate issual of a certificate of election, the section reading: "And certificates of nomination shall immediately issue to the person receiving the greatest number of votes." It seems to be the theory of the majority opinion that the election commissioners would willingly file in the county court clerk's office a tabulation of the vote immediately after the canvass, but that the commission in some cases might not for some reason be willing to issue certificates of nomination to the persons receiving the highest number of votes. The certificates of nomination are issued upon printed blanks and a reasonably competent penman could completely fill out such certificate in not exceeding three or four minutes, so that it does not seem that there could be any great importance attached to this. The work of making and filing a tabulation of the vote is equal to if not much greater than the making of a certificate of election. Certainly if the election commission was corrupt, and unwilling to issue certificates of nomination, it would be equally as corrupt and unwilling to file the tabulation of the vote with the county clerk. If the election commission desired to hold up the result it could do so by failing to file the tabulation just as it could by failing to issue the certificate of nomination, so the result cannot be different. The tabulation is not required to be recorded or made a public record, but the word "file," as used in the statutes, undoubtedly means lodge, or left in the office of the county court clerk, for that is the office in which the tabulation is made, the place where the records of the election commission are kept, and where that body generally does its work. The records of the commission are made by its clerk and the books are left in the office of the clerk of the county court but constitute no part of his records. He has possession of the records of the commission but cannot make any letter thereon or do anything more than hold the same for the commission. This is true both for the

primary election and general election. Their records are
all kept in the office of the county clerk and the commis-
sion generally meets there. When they canvass the re-
turns which includes the inspection and counting of the
ballots as well as the tabulation, the commission has per-
formed all the duties required of it for either a primary
or general election, and when it does its duty in either
instance it has inspected, counted and tabulated the vote,
and that tabulation is or may be lodged with the records
of the commission in the office of the clerk of the county
court, and certificates of nomination or election should be
forthwith issued to the successful candidates.

One argument advanced for the majority opinion is
that the tabulation when filed in the clerk's office, gives
immediate, definite information to the various candidates
of the final result. That would be so if the tabulation
were made public in either a primary or general election,
but if the election commission for any reason should de-
sire to withhold such information from the public it could
as easily withhold the tabulation as the certificate of nom-
ination or election. Such argument is without force and
does not prove that the two sections of the statute to
which we have referred either mean or were intended to
mean that the election commission should pursue a differ-
ent course with respect to the canvassing of the returns
in a general election from those followed in a primary
election.

The rule requiring a contest of a general election to
be instituted "within ten days after the final action of the
board of canvassers" was first laid down in Hall v. Mar-
tin, 183 Ky. 120, the opinion being delivered January 31,
1919, Judge Thomas writing. It referred to the opinion
in the case of Ward v. Howard, 177 Ky. 38, laying down
the principle that a contestant did not have to wait and
in fact could not wait until the certificate of election was
issued, to file a contest but must institute contest proceed-
ings, if at all, as soon as the election commission com-
pleted its canvass of the returns, and "the final action
of the board of canvassers" had been taken, and before
the expiration of the ten days from that date. The Hall-
Martin case, *supra,* was followed and the doctrine reaf-
firmed in Thompson v. Taylor, 184 Ky. 108, the opinion
being prepared by Judge Settle for the court. These are
the only two cases exactly in point, and they are exactly
in point, decided by this court, and although some thirty
volumes of Kentucky Reports have been written and pub-

lished since those opinions were delivered in 1919, the rule laid down there has not been modified or changed in any way by the court in the slightest. The lower court in this case following the rule laid down by this court in the two cases to which we have referred, very properly gave the certificate of election to the appellee, thus putting the question squarely up to this court. What should this court do under the circumstances? Apply the well established rule or make a new one, and assign for the change a reasonless reason, and attempt to discover an undiscoverable distinction between the meaning of the language of the two sections, *supra*.

The rule of *stare decisis* is yet in full force and is frequently invoked even in this court. We should stand by the rules established by decided cases. The strength of the law rests largely in the faith which the people have in its unswerving and impartial enforcement, and courts could not function except for the presumption of right which proceeds from the faith which the people have in the impartiality and fairness of judges. In my humble judgment it would be better for the court to adhere to its established rule that all contests in general elections, as in this case, should be instituted within ten days "after the final action of the board of canvassers," and not within ten days after the issual of the certificate of election. That rule has been adhered to through a number of years. No good, sound or sufficient reason has been assigned for an abrogation of the rule, which is a plain and practical one, and the establishment of a contrary rule.

For these reasons I respectfully dissent.