## Jones v. Cooper et al.

(Decided September 24, 1929.)

H. C. KENNEDY, M. L. JARVIS and W. B. MORROW for appellant.

WILLIAM WADDLE and B. J. BETHURUM for appellees.

Opinion of the Court by Commissioner Stanley—Reversing.

At the primary election held August 3, 1929, the parties to this appeal were candidates for the Republican nomination for county judge of Pulaski county. On the face of the returns appellee Cooper received 4,273 votes, appellee Adams, 3,366, and appellant Jones 865 votes. The certificate of nomination was accordingly given Cooper. The appellant, Jones, filed a contest suit against him and Adams on the 10th. The officer, after using due diligence to find Cooper and failing to do so, on that day tacked a copy of the notice containing the grounds of contest on the front door of his home. Service was had on Judge Adams by delivering to him a copy in person. Not being altogether satisfied with the manner of service on Cooper, Jones, on the 12th, filed another contest proceeding, identical with the other, and on that day another notice was served on Cooper by handing a copy to his mother, who resided in the same home; the officer reporting his inability to locate the contestee.

Judge Cooper moved to quash the officer's return, and filed other responsive pleadings in each case. Contestant moved to consolidate them, while contestee Cooper asked to have the second one abated. After the court ruled they should not be consolidated, the contestant dismissed without prejudice the first one as against Cooper, leaving it as to Adams. No answer was filed by him.

After hearing evidence on the issue as to when the election commissioners had finished canvassing and tabulating the returns and ascertained the one who received the most votes, the court determined that it was done on August 6th, and that the service of the notice in the second suit on the 12th was not within the time required by law, hence that the court was without jurisdiction, and dismissed the proceedings. The conclusion is undoubtedly sound (Ward v. Howard, 177 Ky. 38, 197 S W. 506, 509), if the finding of fact is correct.

It is contended that the court erred in not consolidating the suits. But that question need not be here decided. Neither are we called upon to decide whether the notice served on Saturday, the 10th, properly brought that contestee before the court on the second proceeding filed Monday, the 12th, both of which notified the contestees to answer on the 16th. We are of the opinion that

the notice served on the 12th was sufficient, both in manner and time.

It satisfactorily appears that Cooper was evading service of the process, and that the officer used due diligence to deliver the copy to him in person. Both notices appear to have been properly served. Civil Code, sec. 625; McKay v. Grundy, 155 Ky. 115, 159 S. W. 655; Tackett v. Mayo, 210 Ky. 299, 275 S. W. 866.

In interpreting the provisions of the primary election law with reference to contests (sections 1550-26, 1550-28, Ky. Stats.) in connection with the Corrupt Practice Act (Ky. Stats., sec. 1565b1 et seq.) and for reasons given in the opinion, the court in Ward v. Howard, supra, reached this conclusion: ''We think that when the election commissioners have canvassed and tabulated the vote, and it is ascertained by this canvass and tabulation which candidate has received the majority of the votes, the opposing candidate may at once, and must within five days thereafter, begin his contest proceedings, although no certificate of nomination has been issued.''

This has become fixed as the starting point and time in which such proceedings must be instituted; the case being followed by several others. The day upon which such result is reached, as well as the day the notice is served—but excluding Sunday—must be counted. Damron v. Johnson, 192 Ky. 350, 233 S. W. 745; Whitt v. Howard, 210 Ky. 215, 197 S. W. 794; Colvin v. Mills, 214 Ky. 812, 284 S. W. 115.

If the result was ascertained on August 6th, as appellee Cooper maintains, then service on the 12th (Sunday intervening) would be one day too late. If it was on the 7th, as appellant contends, the service was in time. It appears from the evidence the election commissioners met in the office of the county clerk on the morning of the 6th, and when they adjourned about 5 o'clock that afternoon the returns had been listed, and at least those in the judge's race added, with the figures placed in pencil on the books. No entry had been made with respect to the questioned ballots. On Wednesday morning they continued their labors and completed the tabulation, and verified the additions in the judge's race and others on a machine. In another race a slight correction was found necessary. The certificates of election to successful candidates were then issued.

The provision of the statute (Ky. Stats., sec. 1550-26) is that the commissioners ''shall proceed to canvass

the returns . . . and tabulate the same. The tabulation . . . shall be on another separate sheet of paper for each political party and shall be filed . . . immediately after the canvass of the returns and tabulation of the votes. . . ." As here used, "canvass" means to get together, inspect, and scrutinize the election officer's returns and certificates; to "tabulate" is to arrange in a table or list, or tally, those returns, and to add them. When this shall have been done, by comparison, it is ascertained who received the most votes.

But no one would claim that the very first listing or addition should be accepted as absolutely correct, or that there should not be a check made of the work done. Few men, though they be expert accountants, are willing to declare with absolute assurance that their first efforts in such instances are invariably correct. These election officers recognized their proneness to err and their responsibility. Quite naturally they considered the result first arrived at as tentative and desired to check it before concluding the work as final. It being late in the afternoon, they postponed that labor until the next morning. When it was then gone over, they concluded the tabulation, and then definitely and finally ascertained who had received the most votes within the meaning of the statute. We are of opinion, therefore, that August 7th is the day on which the five days began, and consequently the service of the notice on the 12th (Sunday having intervened) was in time.

It follows that the judgment should be, and it is, reversed, and the case remanded for consistent proceedings.

Whole court sitting.