In the Matter of Lockport Union-Sun & Journal, Inc., Respondent, against Mabel B. Preisch, Clerk of the Board of Supervisors of Niagara County, Appellant.

Fourth Department, April 8, 1959.

*James P. Degnan, County Attorney,* for appellant.

*David E. Jeffery* for respondent.

HALPERN, J. This case turns upon the construction of a statute originally enacted in 1904, the meaning of which is strangely still the subject of controversy.

The statute is now to be found in section 12 of the Tax Law. So far as here relevant it reads as follows: "It shall be the duty of the board of assessors of the several towns of this state, and the boards or officials charged with the duty of assessing property for the purposes of taxation in the several cities of the state, to furnish to the clerks of the boards of supervisors of their respective counties, or in the case of the city of New York, to the city clerk of that city, on or before the first day of September in each year, a full and complete list and statement of all property situated within their respective districts exempt or partially exempt from taxation under the laws of this state. Such list and statement shall be made on blanks furnished by the tax commission, and in such form and to contain and set forth all the information relative to such property and the situation and value thereof, as may be required by the tax commission, and to be verified in the same manner as assessments

of property for the purposes of taxation, and in the city of New York by the chief deputy of the department of taxes and assessments.  *  *  *  And it shall be the duty of the clerk of the board of supervisors of each county and of the city clerk of the city of New York, to transmit such completed lists or statements to the tax commission, on or before the first day of October in each year, and the tax commission shall tabulate such statements, and cause to be published in their annual report to the legislature, a complete tabulated statement, based upon the statement so transmitted to the tax commission, of all real estate in the several counties of the state which is exempt or partially exempt from taxation.  Immediately upon receipt of the completed reports by the various clerks of the boards of supervisors, and the city clerk of the city of New York, those officials shall prepare a tabulated statement of the returns received and shall post a copy thereof in a conspicuous place, and in all cities of the state cause a copy thereof to be published in the official paper or papers of said city twice, with an interval between publications of three weeks, except such cities which publish a complete assessment roll.''

The petitioner, the *Lockport Union-Sun & Journal, Inc.,* maintains that under this section the Clerk of the Board of Supervisors of Niagara County is required to publish in the petitioner's newspaper, the official newspaper of the City of Lockport, a detailed list of all the exempt property in the city, giving the name of the owner of each exempt parcel, its location, the value of the land and the buildings and, in case the property is partially exempt, giving the remaining amount which is subject to taxation.  On the other hand, the Clerk of the Board of Supervisors maintains that all that she is required to cause to be published is '' a tabulated statement '' setting forth the various classes of exempt property and giving the total assessed value of each class.

'' There appears to have been no uniform practice with respect to the form of  *  *  *  publication in the various cities of the State '', under the statute (1957 Report of Atty. Gen., pp. 291, 293).  The construction of the statute has been the subject of many conflicting opinions.  On July 18, 1944, the counsel to the State Tax Commission ruled that the phrase '' tabulated statement '' meant a summary statement and that the duty of the Clerk of the Board of Supervisors was satisfied by the publication of a summary giving the totals of each exempt class.  Two years later, on December 6, 1946, this ruling was reversed. Several years later, on October 18, 1954, the State Board of Equalization and Assessment reverted to the former interpreta-

tion and, accordingly, only a summary statement was published for the cities of Niagara County in the years 1955 and 1956. The Attorney-General concurred in the State board's 1954 ruling in an informal opinion dated August 15, 1956.

However, on January 23, 1957, the new Attorney-General reversed the opinion of his predecessor and he construed the statute as requiring the publication of a detailed list of all the " individual properties " which were exempt from taxation (1957 Report of Atty. Gen., p. 291).

Upon the basis of this opinion, the petitioner brought the present proceeding to compel the Clerk of the Board of Supervisors to cause to be published " for the years 1955, 1956, 1957 and in future years ", in the petitioner's newspaper, a copy of the " list and statement " of all exempt property in the City of Lockport, as furnished by the assessor, in the " form and type " last published for the year 1954. The Special Term granted this relief as to the year 1958 and from its order the present appeal was taken. It will be noted that the order appealed from does not direct the clerk to prepare and publish a " tabulated statement " of any kind but rather directs her to publish a copy of the " full and complete lists and statements " furnished by the assessors.

A consideration of the statutory background of the section in controversy must begin with chapter 525 of the Laws of 1893. That statute dealt only with exempt property in towns; it required the town officials who were charged with the duty of assessing property to furnish to the clerks of the boards of supervisors of their respective counties, " a full and complete list and statement of all property situated within their respective districts exempt from taxation under the laws of this state ". These statements were to be transmitted to the State Comptroller but there was no requirement for the publication of the contents of the statements either by the towns or by the Comptroller. This law was effective only for the year 1893 and was not re-enacted.

In 1900, a statute was enacted dealing only with exempt property located in cities (L. 1900, ch. 689). It provided that the various city officers charged with the assessing of property should each year prepare " a detailed statement of all real property appearing on the assessment rolls of the several cities * * * which statement shall show separately each piece or parcel of real estate appearing upon said assessment rolls which is for any reason exempt from taxation ". The city officers were required to post a copy of the statement in the assessment office and to cause a copy of it to be published once a week for

three successive weeks. The city officers were also required to transmit a copy of the statement to the State Comptroller " and the comptroller shall tabulate said statements * * * and shall certify to the governor, and to the legislature, a complete detailed tabulated statement based upon the statements so transmitted to him ".

This statute remained in force from 1900 to 1904. The city officers, in accordance with its terms, published and posted a detailed list of all exempt properties. The Comptroller, also in accordance with the terms of the statute, prepared a tabulated summary which gave only the classes of exempt property and the totals of each class in the various cities of the State. In his report to the Governor and the Legislature, the Comptroller included only this tabulated summary, as complying with the statutory requirement that he furnish " a complete detailed tabulated statement." (See Annual Reports of St. Comp., Vol. 1 of N. Y. Assem. Docs. for 1900, 1901, 1902 and 1903, pp. 714, 729, 690 and 739 respectively.)

The 1900 statute was repealed by chapter 438 of the Laws of 1904 which added a new section 15 to the then Tax Law. The 1904 statute is the immediate predecessor of section 12 of the Tax Law quoted above. Its terms were very similar to those of the present statute. It applied both to towns and cities and it required the boards of assessors of towns and the boards or officials charged with the duty of assessing property in cities to furnish to the clerks of the boards of supervisors of their respective counties on or before July 1 in each year " a full and complete list and statement of all property situated within their respective districts exempt from taxation under the laws of this state." The clerks of the boards of supervisors were required to transmit to the State Board of Tax Commissioners " such completed lists or statements " and the State board was required to " tabulate such statements " and to " cause to be published in their annual report to the legislature, a complete tabulated statement " based upon the statements so transmitted. Then there follows the sentence (virtually identical with the corresponding sentence in the present statute), which is the subject of controversy here: " Immediately upon the receipt of the completed reports by the various clerks of the board of supervisors, and the city clerk of the city of New York, those officials shall prepare a tabulated statement of the returns received and shall post a copy thereof in a conspicuous place, and in all cities of the state cause a copy thereof to be published in the official paper or papers of said city at least once in each week for three successive weeks."

The expense of publication was made a city charge to be audited and paid in the same manner as charges for other city notices.

The 1904 statute was amended by chapter 43 of the Laws of 1908 so as to reduce the number of publications from three to two. Without any further change, it became section 15 of the Tax Law of 1909 (L. 1909, ch. 62). It was renumbered section 12 by chapter 470 of the Laws of 1933. The reference to the State Board of Tax Commissioners in the statute was replaced by a reference to the State Tax Commission by chapter 323 of the Laws of 1916.

Both under the 1904 statute as originally enacted and under the present statute, the assessors were required to furnish the clerk with " a full and complete list " of all exempt and partially exempt property. If the Legislature had intended that the clerks of the boards of supervisors should post and publish a detailed list of all the exempt property, it could simply have required the posting and publication of the lists as filed with the clerks by the assessors. There would have been no need to provide for the preparation of a tabulated statement. As the State Board of Equalization and Assessment observed in its 1954 opinion, in directing that the clerks prepare and publish a tabulated statement, the Legislature must have intended that they " prepare and publish something less than a list of each parcel of exempt property and partially exempt property."

It will be recalled that for the years 1900 to 1903, under the 1900 statute requiring the State Comptroller to publish in his report " a complete detailed tabulated statement " he published only a summary of exempt property by classes, as satisfying the statutory requirement. This settled administrative construction of the statute was before the Legislature when it adopted chapter 438 of the Laws of 1904. In using the term " tabulated statement," with respect to publication in cities, the Legislature must have had in mind the kind of tabulated statement theretofore published by the Comptroller. In fact, the words " tabulated statement " used by the Legislature were less exacting than the words " complete detailed tabulated statement " which were used in the earlier statute with respect to the publication by the State Comptroller.

When the Legislature, in using a term in a new statute, has before it a settled administrative construction of the same term as it appeared in a prior statute dealing with the same subject matter, the Legislature must be deemed to have intended that the term should be given the same meaning in the new statute as it had been given by the prior administrative construction.

" By enacting without material change the language which the State Liquor Authority had previously construed the Legislature in effect adopted the practical construction placed upon it by the administrative agency charged with its formulation and enforcement." (*Matter of Dobess Corp.* v. *Magid,* 186 Misc. 225, 231–232 [per SHIENTAG, J.] ; see, also, *Helvering* v. *Reynolds Co.,* 306 U. S. 110, 115; *Matter of Gilmore* v. *Preferred Acc. Ins. Co.,* 283 N. Y. 92, 97; *Matter of Faber,* 305 N. Y. 200, 206; *Matter of Hotel Assn.* v. *Weaver,* 3 N Y 2d 206, 214; *Matter of Foscarinis* [*Corsi*], 284 App. Div. 476, 478; *Matter of Berson* [*Corsi*], 283 App. Div. 190, 195.)

In adopting the 1904 statute, the Legislature clearly evinced an intention to impose a less onerous posting and publication requirement upon the clerks of the boards of supervisors, than that which had been theretofore imposed upon city officials under the 1900 statute, which the Legislature concurrently repealed. It will be recalled that the city officials had been required under the 1900 statute to post and publish the detailed lists of exempt property and under the same statute the State Comptroller had been required to publish only a " tabulated statement ". Having these two different requirements before it, the Legislature chose, in 1904, to adopt as a standard for publication by the clerks of the boards of supervisors the requirement which had theretofore been imposed on the State Comptroller rather than the more costly and more burdensome requirement which had theretofore been imposed upon the city officials. The Legislature apparently decided that the publication of the detailed statements had put the cities to unnecessary expense and that the public interest would be adequately protected by the publication of the tabulated summaries. The change of language in the 1904 statute represented a deliberate choice by the Legislature, which must be given effect (cf. *Connors* v. *Boorstein,* 4 N Y 2d 172, 175; *James* v. *Patten,* 6 N. Y. 9, 11–12; *Rosenblum* v. *Gorman,* 21 App. Div. 618; *Loos* v. *City of New York,* 257 App. Div. 219, 223; *People ex rel. Carollo* v. *Brophy,* 294 N. Y. 540, 544).

Under the 1904 statute and under the present statute, the words " tabulated statement " in the provision requiring the transmission to the Legislature of " a complete tabulated statement " are identical with the words " tabulated statement " in the provision requiring the clerks of the boards of supervisors to prepare " a tabulated statement " of the returns received and to post the same and, in cities, to cause a copy to be published.

We do not believe that it is logically permissible to read these words differently, as they appear in two different places in

a single statute. In both cases, they must be held to refer to the same type of statement. Under the 1904 statute and under the present statute, the State Board of Tax Commissioners and the State Tax Commission, respectively, annually prepared tabulated summaries showing the exempt property by classes and by municipalities and published them in their reports. (See Annual Reports in New York Assembly Documents and in New York Legislative Documents from 1905 to date.) It is conceded that the construction of the statute by the State officials was the correct one and that these tabulated summaries fully complied with the requirement that the State officials publish in their reports " a complete tabulated statement ". The same words being used in imposing the posting and publication requirement upon the clerks of the boards of supervisors, the same construction must be given to that requirement.

It is true that under the construction here approved, an interested person would have to make inquiry at the clerk's office or the assessor's office in order to ascertain the details as to each parcel of exempt property, but this information is readily available. The annual publication of the tabulated summary directs the attention of the public to the total amount of the exempt property of each class, and any person whose interest is aroused by any changes reflected in the annual totals may pursue the matter further by inquiry at the appropriate office.

Reliance is placed by the petitioner upon the fact that by chapter 323 of the Laws of 1916 the requirement of publication was made inapplicable to " cities which publish a complete assessment-roll ". But this provision does not give much aid in solving the construction problem here presented. Of course, in cities which publish a complete assessment roll, there is no need for the publication even of a tabulated summary of exempt property, so that the exception would be equally applicable whether the general requirement were construed to mean the publication of a detailed list or a tabulated summary. Therefore, no inference can be drawn from the 1916 proviso that one construction rather than the other is the correct one.

The question is one which is not free from doubt, as is indicated by the conflicting opinions rendered by the Attorney-General and the State boards and the reversals of their opinions from time to time. Unfortunately, the subsequent legislation has not thrown any light upon the problem; in the new Real Property Tax Law, which is to take effect on October 1, 1959, section 12 of the Tax Law becomes section 496 but the language is carried forward without any change of substance.

We find the logical difficulty involved in giving the words "tabulated statement" which appear at two different places in the same section a different meaning in each place to be an insuperable obstacle to the adoption of the petitioner's construction. It is clear that the Legislature intended to impose the same duty, in respect to the nature and content of the statement to be published, upon the clerks of the boards of supervisors and upon the State Tax Commission. It being conceded that the State Tax Commission is required to publish only a tabulated summary, we conclude that that is all which is required to be published by the clerks of the boards of supervisors.

The order appealed from should be reversed and the petition dismissed.

GOLDMAN, J. (dissenting). The prevailing opinion quite correctly asserts that this case turns upon the construction of section 12 of the Tax Law, but I am unable to agree with the result reached. In my view the majority opinion fails to take due heed of well-recognized canons of statutory construction. It is arguable whether the statute is ambiguous. The pivotal words are "tabulated statements" and it is with the definition of these words that I cannot concur. I am not unmindful of Judge LEARNED HAND's wise admonition that one should not make "a fortress out of the dictionary" (*Cabell* v. *Markham*, 148 F. 2d 737, 739) but surely he did not intend by that sage remark to advocate that words do not generally mean what they are defined to express by our accredited lexicographers. The Century Dictionary and Cyclopedia (Vol. 9, p. 6151) defines tabulate "To put or form into a table or tables; collect or arrange in lines or columns; formulate tabularly: as to *tabulate* statistics or a list of names." (And, see, *Colvin* v. *Mills*, 214 Ky. 812, 819; *Kunkle* v. *Coleman*, 174 Ind. 315, 321; *Jones* v. *Cooper*, 230 Ky. 566, 569; *Matter of Inselbuch* v. *Helfand*, 266 N. Y. 155, 156; *Matter of Goldin*, 171 Misc. 761, 762.) "Some statutes are framed in language so plain that an attempt to construe them is superfluous. The function of the courts is to enforce statutes, not to usurp the power of legislation, and if the legislative intent is clear no attempt at construction will be made. * * * When the language is explicit, the courts are bound to seek for the intention in the words of the act itself to the extent that they are not at liberty to suppose or to hold that the Legislature had an intention other than their language imports." (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 76.)

It has also been said that "When the meaning of a statute is clear, construction is unnecessary; in such a case, the duty of the court is to carry out the expressed legislative intent, not to read a different intent into the law by the aid of canons of construction. But, if the intent of the law making body is not clear, and the construing power of the courts is therefore called into operation, they will be guided by the canons of interpretation, which long experience and the settled wisdom of the courts have uniformly approved. * * * The Legislature is deemed to have had knowledge of the rules of construction when they enacted a statute; and, in the absence of anything to the contrary, the courts suppose that the Legislature intended its acts to be interpreted in accordance with such rules". (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 91.)

The tenor of the prevailing opinion is that administrative officers construed "tabulated statement" as if the Legislature has said "summarized" statement and that it is logically difficult to give the words "tabulated statement" used at two different places in the same section a different meaning.

The difficulty with that reasoning, as I view it, is the failure to recognize that different administrative officers are involved and the "tabulated statement" is to serve a different purpose in its use by the distinctly different officials. The 1957 opinion of the Attorney-General commencing at page 291 of the official opinions points out at page 294:

"Bearing in mind the different purposes of the requirements respecting publication in the newspapers and publication by the State Tax Commission in its annual report and the context in which the word is used in the statute, I am of the opinion that the requirements of the statute respecting newspaper publication are not met by the publication of a summary statement reflecting the number of parcels and the gross amount exempted in each class of tax exemption.

"The purpose of the inclusion in the report of the State Tax Commission of 'a complete tabulated statement based upon the statements transmitted to it' is to show the over-all effect of such exemptions upon the economy of the State. It is, therefore, perfectly proper to read the word 'tabulated' as requiring only a segregation of the number of parcels and the amount of exemptions in each tax exempt classification. On the other hand, the purpose of the publication in the newspapers is to advise local taxpayers of the specific properties that have been exempted in cities and to guard against errors, discrimination and fraud. This purpose is wholly defeated by the publication of a summary statement and I am, therefore,

constrained to read the words ' a tabulated statement of the returns received ' in the sense that the statement is the preparation in tabular or table form from all of the various returns prepared by the local assessment officers of the city. Such a construction carries out the basic intent of this provision of the statute.

'' In answer to your inquiry, therefore, I am of the opinion that the statement required to be published must list all of the individual properties which are exempt from taxation.''

It is undisputed that for many years prior to 1955 respondent-appellant or her predecessor as Clerk of the Board of Supervisors of Niagara County, New York, the officers charged with the administration of the statute, published a full and complete list in tabulated form of all property situated within the city exempt or partially exempt from taxation with the names of the owners as contained in the forms and blanks of the State Tax Commission furnished to respondent-appellant by the Commissioner of Assessment and Taxation of the City of Lockport.

Further not mentioned in the prevailing opinion is the fact that in 1910, in the Report of the Attorney-General there is an official opinion to the State Board of Tax Commissioners in the course of which the statement is made at page 677 '' in each city from which returns of exempt property are received, there shall be published in the official papers of such city a copy of the exempt list from such city as disclosed by said returns ''. True it is that the primary question there involved was whether the published list need only include the exempt property within the city limits. The fact remains, however, that the Attorney-General there construed '' tabulated statement '' as contained in the 1904 statute as requiring publication of the exempt list. Despite such construction, which remained unchallenged for almost half a century, the Legislature, although making changes in the statute in 1916 and renumbering the section in 1933, left unchanged the words '' tabulated statement ''.

It was not until 1956 that the Attorney-General, in an informal opinion which does not even appear in the published volume of Informal Opinions for 1956, construed the statute as requiring the publication of a summary statement; not a tabulated statement as provided in the statute. The informal opinion thus made on August 15, 1956 was short-lived. The formal opinion of the present Attorney-General was made on January 23, 1957.

We have then two bases for concluding that the words as used in section 12 of the Tax Law, as they relate to the publication in the official paper or papers of the city involved, require not a summary but a published list of all of the individual properties. It has been uniformly held that: " 'the practical construction of a statute by those for whom the law was enacted, or by public officers whose duty it is to enforce it, acquiesced in by all for a long period of time, is of great importance in its interpretation in a case of serious ambiguity.' (*Grimmer* v. *Tenement House Department of N. Y.*, 205 N. Y. 549, 550.) " (*People ex rel. Werner* v. *Prendergast*, 206 N. Y. 405, 411.) (See, also, *Matter of Smith*, 279 N. Y. 479, 489.) Again the statement is made in *Hassan* v. *City of Rochester*, 67 N. Y. 528, 534–535: " The reports of public officials to the legislature, also show the payment of numerous assessments of a similar character, and the Session Laws, for a series of years, down to the present time, make provision for the same, thus giving a legislative construction to enactments of this character. This practical construction continued for a long period of time, is entitled to a great weight in the interpretation of a statute unless the legislation and practice is manifestly in violation of the words used, and has almost the force of a judicial exposition."

Despite conflicting views by certain State public officials, so far as the record before us discloses, the respondent-appellant until 1955 for many consecutive years published a complete list of all the exempt or partially exempt properties. There was thus a practical construction placed upon the statute by the official or officials in question which construction, in my opinion, is entitled to substantial weight.

I believe, however, that the most impelling reason for construing the statute as I have is based upon the 1957 opinion of the Attorney-General, the final official word by that office reaffirming the 1910 opinion and the subsequent re-enactment of the statute (L. 1958, ch. 959) without substantial change. In those circumstances, except that there is lacking court definition, the following excerpt from *Matter of Gilmore* v. *Preferred Acc. Ins. Co.* (283 N. Y. 92, 97) is persuasive: " The use of these terms, therefore, falls within the recognized principle that where terms have been defined by the courts and the Attorney-General, it is presumed that the continued use of those terms by the Legislature subsequent to the definitions is in accordance with the meaning thus defined."

It has been contended that publication of the list containing the names of exempt property owners rather than just the sum-

maries of categories of exemption would be an undue expense to the county. In the instant case it is argued that the complete list would cost $952.56 as against $18 for the summarized statement. Even if the amount involved were many times greater than the modest cost of publishing the entire list in a "tabulated statement" as mandated by the statute, I would remind the respondent-appellant that the cost of informing our citizens of the affairs of their government and thereby inciting their interest in it, whether it be fiscal or otherwise, can never be too great. A free and responsible society should demand no less.

Accordingly, I dissent and vote for affirmance.

All concur, except GOLDMAN, J., who dissents and votes for affirmance in a separate opinion. Present — McCURN, P. J., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Order reversed on the law, without costs of this appeal to either party and petition dismissed.